J-S40014-23

2024 PA Super 59

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DARREN LAWRENCE | : | |
| | : | |
| Appellant | : | No. 2486 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 9, 2022
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR0000869-2020

BEFORE: NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

OPINION BY NICHOLS, J.: **FILED MARCH 27, 2024**

Appellant Darren Lawrence appeals from the judgment of sentence imposed following his conviction of one count of rape of a child, ten counts of involuntary deviate sexual intercourse (IDSI) with a child, five counts of aggravated indecent assault of a child, and one count each of indecent assault of a person less than thirteen years of age, endangering the welfare of children (EWOC), and sexual abuse of children-photographing, videotaping, depicting on computer or filming sexual acts.[1] On appeal, Appellant raises multiple claims concerning the hearing on the Commonwealth's motion in *limine*, the sufficiency of the evidence, his designation as a sexually violent predator

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), 4304(a)(1), and 6312(b), respectively.

(SVP), the trial court's evidentiary rulings, and the discretionary aspects of his sentence. After careful review, we affirm.

The trial court set forth the following factual and procedural history:

On February 21, 2020, Detective James Ciliberto of the Chester County Detectives Office received a report of suspected child abuse, otherwise referred to as a "CY104 report" or "Childline," involving [A.R.] and [] Appellant. Detective Ciliberto contacted [A.R.] immediately and arranged for an interview on the same day. During the interview, [A.R.] advised Detective Ciliberto that Appellant sexually abused her from the age of nine (9) to approximately twelve (12) years old. She informed Detective Ciliberto she previously reported abuse when she was about eighteen (18) or nineteen (19) years old and why she did not move forward at the time. Detective Ciliberto later confirmed [A.R.'s] statement of making a previous report as she had been interviewed by retired [Pennsylvania] State Trooper Todd Hershey when she was fourteen (14) years old.

[Trooper Hershey] testified at trial regarding his investigation following a 2014 Childline report filed by [] Caryn Malatesta. Ms. Malatesta, a mental health professional in the Avon Grove school system, testified at trial she met [A.R.] on the recommendation of a teacher due to "whatever transpired in that conversation. [A.R.] revealed to Ms. Malatesta she had been sexually abused for several years. Although [A.R.] willingly disclosed, for the first time the past abuses she suffered, [A.R.] did not provide Ms. Malatesta her abuser's full name.

After receiving a report of suspected sexual abuse, Trooper Hershey contacted [J.R., A.R.'s] mother, and set up a time to conduct an interview of [A.R.] at the Pennsylvania State Police Barracks in Avondale, PA (Troop J). As a highly trained and experienced interviewer of child victims of abuse, Trooper Hershey found [A.R.] to be hesitant, impatient, anxious, and frustrated during their interview. Upon conclusion of [A.R.'s] interview, Trooper Hershey spoke with [J.R.] and [A.R.] regarding the next steps in the investigation, namely the need for a more detailed forensic interview. However, [A.R.] failed to continue cooperating with the investigation and Trooper Hershey closed the investigation for reporting purposes.

At twenty-two (22) years old, [A.R.] finally disclosed the prolonged abuses she previously attempted to disclose were perpetrated by Appellant. [A.R.] indicated she chose to come forward due to her mother, [J.R.], having a conversation with Appellant's adopted daughter, [D.L. J.R.] inquired of [D.L.] of possible abuse against her as well as disclosing alleged abuses against [A.R.] At her interview, [A.R.] stated she performed oral sex on [] Appellant approximately fifty (50) times during the three (3) year period of abuse. Appellant performed oral sex on her "pretty often." Appellant photographed her nude. Appellant digitally penetrated her vagina and anus. Appellant attempted to insert his penis into her vagina. [A.R.] specifically indicated Appellant performed these acts at her mother's home, Appellant's home, Appellant's neighbor's home, and other various locations within Chester County, Pennsylvania.

During the interview, at Detective Ciliberto's direction, [A.R.] provided her phone and consented to a digital download of its contents. Detective Ciliberto then received approval for a "consensual intercept" to be performed that night between [A.R.] and Appellant. The "intercept" was executed that evening between [A.R.] and Appellant to confirm or learn additional information.

Although Appellant did not provide any meaningful information and was unwilling to continue the conversation over the phone, Appellant later agreed to an in-person meeting which occurred on February 28, 2020. [A.R.] agreed to and did wear a "wire" to record the conversation between herself and Appellant which occurred on February 28, 2020. During the conversation, Appellant made several incriminating statements ultimately leading to his arrest and subsequent prosecution.

\* \* \*

On September 22, 2021, after three days of trial, the jury found Appellant [] guilty of nineteen (19) offenses stemming from sexual abuse which occurred between 2008 and 2012 when [A.R.] was between nine (9) and twelve (12) years of age. During the trial, the Commonwealth established the incidents occurred in multiple locations in Chester County, Pennsylvania, including Appellant's home, [A.R.'s] home, and Appellant's vehicle, over the course of approximately three (3) plus years.

On October 7, 2021, after being found guilty, the trial court entered an order directing the State Sexual Offender Assessment

- 3 -

Board ("SOAB") to perform an assessment of Appellant to determine if he meets the criteria to be statutorily classified as a [SVP]. On November 30, 2021, the trial court entered an order for a pre-sentence investigation. The Commonwealth filed a memorandum in support of sentencing on July 27, 2022 and Appellant filed a memorandum in support of motion for judgment of acquittal on August 2, 2022.

A [SVP] assessment hearing was held on August 3, 2022 and sentencing followed. During the SVP hearing, Dr. Bruce Mapes testified on behalf of the Commonwealth as an expert in the field of sexual offender assessment and treatment and Dr. Christopher Lorah testified on behalf of Appellant as an expert in the field of forensic psychology. After hearing both experts and argument of counsel, the trial court declared Appellant [to be a] SVP and proceeded to sentencing. During sentencing, Appellant presented the following character witnesses: Anna Guy (Appellant's significant other) and [D.L.] (Appellant's adopted daughter). Appellant also presented a mitigation package for the [trial court's] consideration. The Commonwealth presented the following character witnesses: [J.R. (A.R.'s] mother), [L.M. (A.R.'s] foster mother), and A.R. (victim).

Appellant was re-sentenced on August 9, 2022 due to an error on the sentencing sheet. [The trial court sentenced Appellant to an aggregate term of forty-two to eighty-six years' incarceration.] Appellant filed a post-sentence motion to reconsider on August 12, 2022 and the trial court denied his motion on September 12, 2022. On September 30, 2022, Appellant filed the present appeal and was ordered to file a statement of errors complained of on appeal on October 4, 2022 and he filed his statement of errors on October 25, 2022.

Trial Ct. Op., 12/30/22, at 3-7 (some formatting altered, quotation marks, footnotes, and citations omitted). The trial court subsequently filed an opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

1. Whether [Appellant] was deprived of his right to be present at a critical stage of trial, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and

Article I Section 6 of the Pennsylvania Constitution, for a hearing on the Commonwealth's motion *in limine* to admit other acts evidence?

2. Whether the [trial court] erred in granting the Commonwealth's motion *in limine* to admit [Appellant's] prior convictions for tax fraud from 2001?

3. Whether the [trial court] erred in granting the Commonwealth's motion *in limine* to admit other[] acts evidence of a sexual encounter between [Appellant] and the victim that occurred at Six Flags Great Adventure?

4. Whether the trial court erred in failing to provide the jury with an immediate and complete limiting instruction as to the purpose of the evidence of the prior sexual encounter at Six Flags Great Adventure, and the limiting instruction provided in the jury charge was defective?

5. Whether the evidence was insufficient to sustain [Appellant's] convictions for ten counts of IDSI where there was only testimony to support, at most, five to seven counts?

6. Whether the [trial court] erred in declaring [Appellant] a[] SVP with no factual basis to make that determination when [Appellant] had over ten years of non-detection, and there was only evidence of his abuse against a single victim?

7. Whether the [trial court] erred in overruling [] Appellant's objections to the Commonwealth's line of hypothetical questioning of Dr. Lorah after the Commonwealth conceived of hypotheticals and then attributed them to another expert without any basis?

8. Whether the [trial court's] sentence was an exercise of discretion for reasons of partiality, prejudice, bias, or ill-will[?] The [trial court] remarked at sentencing that there should be no volume discounts for such crimes evidencing a bias against and ill-will toward Appellant?

9. Whether the [trial court's] sentence double counted the aggravating factors included in the sentencing guidelines to impose a sentence that was an upward departure from the aggravated range?

10. Whether [the trial court] imposed a *de facto* life sentence on [Appellant] and did not adequately account for [Appellant's]

mitigating factors and his advanced age at the time of sentencing[?]

Appellant's Brief at 4-5.

## Motion in *Limine*

In his first issue, Appellant contends that the trial court erred when it held a hearing on the Commonwealth's motion *in limine* outside of Appellant's presence. Appellant's Brief at 8. Appellant argues that the motions hearing was a critical stage of the criminal proceedings and that therefore, the trial court's decision to conduct the hearing in Appellant's absence constitutes reversible error. *Id.* at 9.

The Commonwealth responds that Appellant waived this issue by failing to preserve it for appellate review. Commonwealth's Brief at 11-12.

The Pennsylvania Rules of Appellate Procedure mandate that "[i]ssues not raised before the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Wallace*, 289 A.3d 894, 908 (Pa. 2023).

In the instant case, the record reflects that on September 20, 2021, the trial court held a hearing to address the Commonwealth's motion *in limine* to admit evidence of Appellant's 2001 conviction for tax fraud. At the beginning of the hearing, the trial court noted Appellant's absence. N.T. Hr'g, 9/20/21, at 3. Appellant's attorney requested a brief recess so that he could attempt to reach Appellant by telephone. *Id.* The trial court denied the request and stated: "Let's start with the motions *in limine* and then we can go from there."

*Id.* Appellant's attorney responded: "We can do that, that's fine. Certainly."

*Id. see also* Appellant's Brief at 8. Throughout the remainder of the hearing, Appellant's attorney did not raise an objection to conducting the hearing in Appellant's absence. N.T. Hr'g, 9/20/21, at 3-15. Based on this record, we conclude that Appellant failed to object and raise this issue before the trial court; therefore, he has waived this issue on appeal. *See* Pa.R.A.P. 302(a); *Wallace*, 289 A.3d at 908.

### Appellant's Prior Tax Fraud Conviction

In his second issue, Appellant contends that the trial court erred when it permitted the Commonwealth to impeach his credibility with evidence of his convictions for tax fraud from 2001. Appellant's Brief at 11. Specifically, Appellant argues that the trial court failed to adequately consider alternative measures "to admit [] Appellant's prior employment into evidence" without his "prejudicial" retirement from the Pennsylvania State Police, thereby abusing its discretion. *Id.* at 15.

It is well settled that our standard of review of a trial court's evidentiary rulings is abuse of discretion. *Commonwealth v. DiStefano*, 265 A.3d 290, 297 (Pa. 2021). This Court has defined abuse of discretion as "not merely an error of judgment, but [] rather the overriding or misapplication of the law or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017).

The Pennsylvania Rules of Evidence permit the admission of evidence of a conviction of a crime involving dishonesty or false statement, commonly referred to as *crimen falsi* offenses, for the sole purpose of attacking the credibility of a witness. Pa.R.E. 609(a); **see also Commonwealth v. Washington**, 269 A.3d 1255, 1264 (Pa. Super. 2022) (*en banc*). Generally, Rule 609 limits such evidence to convictions that occurred within the previous ten years prior to the witness's testimony. Pa.R.E. 609(b). Rule 609, however, permits evidence of a conviction of a *crimen falsi* offense outside of the ten-year lookback period if the probative value of the evidence "substantially outweighs its prejudicial effects" and "the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Pa.R.E. 609(b)(1)-(2).

This Court set forth the following factors that a trial court must consider when determining whether to admit evidence of a conviction from outside the ten-year lookback period:

> 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

***Commonwealth v. Palo***, 24 A.3d 1050, 1056 (Pa. Super. 2011) (citing

***Commonwealth v. Randall***, 528 A.2d 1326, 1328 (Pa. 1987) (citation

omitted)).

The trial court reached the following conclusion:

> [The trial] court found the probative value substantially outweighed its prejudicial effect. Further, Appellant received adequate notice of the Commonwealth's intent to use the prior convictions as evidence. [The trial] court found, if Appellant chose to testify during trial, the prior convictions and Appellant's subsequent termination from the state police would be relevant and admissible rebuttal evidence. Initially, the trial court intended to exclude the prior conviction, however, upon hearing the facts, agreed that it was part of the Commonwealth's case theory and inevitable. Further, allowing the prior offense evidence to be offered in the event Appellant testified enabled the jury to fully consider the facts and circumstances surrounding Appellant's termination. Without this evidence, the Commonwealth undoubtedly would have been prejudiced.
>
> Although the exact factors were not placed on the record, it is clear the factors set forth in Rule 609 and ***Randall*** were satisfied. First, Appellant's prior crimes, tax fraud and conspiracy to commit tax fraud, directly reflect upon Appellant's honesty and veracity as a potential witness. Second, the prior crimes do not tend to show that Appellant had a propensity to commit the crimes for which he was charged. To the contrary, Appellant's prior convictions were non-violent crimes with no identifiable victim, whereas here, Appellant's crimes directly relate to the sexual abuse of a single, minor victim [for whom he was entrusted to care]. Furthermore, Appellant committed these offenses after previously serving as a state trooper tasked with upholding the law. Allowing the Commonwealth to offer Appellant's prior conviction as rebuttal evidence necessarily provided the jury a complete perspective.
>
> Third, Appellant was an adult when he committed the prior tax and fraud offenses and the instant sexual offenses he now appeals. Moreover, as stated above, Appellant was a state trooper charged with upholding the law when he committed his prior offenses and when he initially met the minor victim. The fourth

and fifth factors can be assessed together. In the case at hand, the Commonwealth's need to resort to this evidence and the lack of alternative means of attacking [] Appellant's character clearly weigh in favor of admitting the prior offenses in rebuttal, if Appellant testified. As argued by the Commonwealth, the credibility of the victim and Appellant, if he chose to testify, were the crux of the case.

Trial Ct. Op. at 12-13 (citations and footnote omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See DiStefano*, 265 A.3d at 297. The record reflects that the trial court was initially inclined to exclude evidence of Appellant's tax fraud conviction, but warned the parties that if Appellant referenced the fact that he was a former Pennsylvania State Police trooper, then evidence of his tax fraud convictions would be admissible. N.T. Hr'g, 9/20/21, at 9. Even though an on-the-record analysis of the *Randall* factors did not take place, we cannot conclude that the trial court committed reversible error, as the probative value of the evidence of Appellant's prior convictions outweighed the prejudicial effect. *See* Pa.R.E. 609(b)(1). As noted by the trial court, Appellant's prior criminal history "directly reflect[s] upon [his] honesty and veracity as a potential witness." Trial Ct. Op. at 12. The trial court further concluded that Appellant's prior convictions—all of which related to tax fraud—would not suggest that "Appellant had a propensity to commit the crimes for which he was charged." *Id.* The trial court also noted Appellant's status as a former Pennsylvania State Police trooper "charged with upholding the law when he committed his prior offenses and when he met [A.R.]" *Id.* at 13. For the reasons set forth by the trial court in its Rule 1925(a) opinion, we find that

- 10 -

Appellant is not entitled to relief on this issue. *See Randall*, 528 A.2d at 1328; *Palo*, 24 A.3d at 1056.

**Prior Bad Acts Evidence**

Next, Appellant alleges that the trial court erred when it permitted the Commonwealth to introduce evidence of a sexual encounter between Appellant and A.R. which occurred at Six Flags Great Adventure (Six Flags) in the State of New Jersey. Appellant's Brief at 15. Appellant argues that admission of this evidence would only serve to "enrage the jury further and serve to bias them against [Appellant] when they learned of another, uncharged action." *Id.* at 16. Further, Appellant contends that introduction of this evidence was confusing to the jury and that the prejudicial value of the evidence outweighed any probative value. *Id.*

The Commonwealth responds that Appellant's attorney agreed to the admission of the evidence at trial; therefore, this issue is waived on appeal. Commonwealth's Brief at 38.

Our review of the record confirms that Appellant's attorney agreed to the admissibility of the evidence at issue. Specifically, the record reflects the following:

> [Appellant's counsel]: Judge, in light -- and I apologize. [The assistant district attorney] and I had multiple conversations, and e-mails, and text[s], all kinds of communication over the past couple of weeks. I don't recall, and forgive me if we talked about it and I forgot, the limiting instruction being referenced, and if it was, I apologize, but if there is a limiting instruction, Judge, I would agree. So, I think for continuity sake for, frankly, both sides, excising that audio recording will make things, I think, more confusing for the jury. So, I think if [the assistant district

attorney] and I will commit to agreeing on a limiting instruction, I would not have an objection to number three[2] with that provision, Judge.  An[d] again, [], I'm sorry if we talked about that or referenced that.

[The Commonwealth]:  I don't know that I previously referenced a limiting instruction, but I would agree that it is appropriate under the circumstances.

The Court:  All right.  Very good.  That agreement is accepted.

[Appellant's counsel]:  We'll work on that before the end, certainly.  Thank you.

N.T. Trial, 9/20/21, at 13.

As noted above, to preserve an issue for appellate review, an appellant must first raise the issue before the trial court.  *See* Pa.R.A.P. 302(a).  Here, because Appellant's attorney agreed to the admission of evidence concerning a sexual encounter between Appellant and A.R. at Six Flags, he cannot challenge that ruling on appeal.  *See Wallace*, 289 A.3d at 908 (reiterating that issues must be preserved before the trial court and generally cannot be raised for the first time on appeal).  Accordingly, this issue is waived on appeal.

**Jury Instructions**

In his next issue, Appellant raises a challenge to the trial court's jury instructions regarding the evidence of an alleged sexual encounter at Six Flags.  Specifically, Appellant states that the trial court did not provide a jury

---

[2] "Number 3" refers to a Commonwealth motion *in limine* in which the Commonwealth sought to introduce evidence that one of the incidents of alleged abuse occurred at [Six Flags]" in the State of New Jersey. Commonwealth's Motions *in Limine*, 9/17/21.

- 12 -

instruction regarding this evidence at the time of the testimony; rather, the trial court provided the jury with a limiting instruction as part of the final charge to the jury. Appellant's Brief at 17. Appellant baldly claims that the trial court erred when it failed "to provide the jury with an immediate and complete limiting instruction as to the purpose of the evidence of [a] prior sexual encounter at Six Flags [], and the limiting instruction provided in the jury charge was defective." *Id.*

Our review of the record confirms that Appellant did not object to the lack of a limiting instruction at the time the Commonwealth introduced the evidence concerning the prior sexual encounter between Appellant and A.R. at Six Flags. *See* N.T. Trial, 9/21/21, at 20, 40, 42. We do note, however, that a limiting instruction was discussed by the trial court and both parties during a discussion regarding evidence of prior bad acts. *See id.* at 13. Further, the record reflects that Appellant did not raise an objection to the trial court's final charge to the jury. *See* N.T. Trial, 9/22/22, at 210-11. Accordingly, because Appellant failed to first raise the issue before the trial court, it is waived. *See* Pa.R.A.P. 302(a); *Wallace*, 289 A.3d at 908.[3]

---

[3] Even if Appellant had adequately preserved this issue before the trial court and not raised it for the first time on appeal, this issue is nonetheless waived on appeal. It is well settled that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Westlake*, 295 A.3d 1281, 1286 n.8 (Pa. Super. 2023). In his brief, Appellant alleges that the trial court's instruction to the jury regarding the evidence of a sexual encounter between Appellant and A.R. at Six Flags was defective, but at no point does Appellant elaborate as to how or why the instruction was
*(Footnote Continued Next Page)*

**Sufficiency of the Evidence**

Appellant raises a challenge to the sufficiency of the evidence as it pertains to several of his convictions for IDSI. Specifically, Appellant argues that "the evidence was insufficient to sustain [Appellant's] convictions for ten counts of [IDSI] where there was only testimony to support, at most, five to seven counts." Appellant's Brief at 18.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> In applying the above test, we may not reweigh the evidence and substitute our judgment for the fact-finder.

***Commonwealth v. James***, 297 A.3d 755, 764 (Pa. Super. 2023) (citations omitted). Importantly, it is well settled that in cases addressing sexually-based offenses, the uncorroborated testimony of the complainant, if believed

---

defective. ***See*** Appellant's Brief at 17-18. Based on Appellant's failure to develop this issue, we find that this issue would be waived on that basis. ***See Westlake***, 295 A.3d at 1286 n.8.

by the finder of fact, is sufficient to warrant a conviction. ***Commonwealth v. Diaz***, 152 A.3d 1040, 1047 (Pa. Super. 2016).

The Crimes Code defines IDSI, in relevant part, as deviate sexual intercourse with a complainant who is less than thirteen years of age. 18 Pa.C.S. § 3123(b). Deviate sexual intercourse is defined by the Crimes Code as follows:

> Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S. § 3101. This Court has determined that evidence of oral contact between a defendant's genitalia and the victim's mouth is sufficient to warrant a conviction of IDSI. ***Commonwealth v. Trippett***, 932 A.2d 188, 194 (Pa. Super. 2007). Likewise, evidence that a defendant had oral contact with the victim's genitalia is sufficient to prove IDSI. ***Id.***

> In the instant appeal, Appellant contends that A.R. testified,

> at best, to only five to seven incidents of IDSI. The only incidents with any specificity that even approached the elements for IDSI were in a trailer at Baker Road, at a house on Mill Road, in [] Appellant's car at Six Flags (which no elements of the crime occurred [in the Commonwealth of Pennsylvania]), and in [] Appellant's truck behind a mushroom plant. Besides these incidents, [A.R.] offered no further details or evidence of other sexual abuse.

Appellant's Brief at 18-19.

- 15 -

The Commonwealth counters by arguing that a "thorough review of the evidence, when viewed in the light most favorable to the Commonwealth, does not show that the evidence was so weak and inconclusive that a reasonable factfinder could not be satisfied as to the guilt of [Appellant] beyond a reasonable doubt. Commonwealth's Brief at 54-55.

Preliminarily, we note that the Commonwealth initially charged Appellant with thirty-six counts of IDSI; however, the Commonwealth only elected to proceed with ten counts of IDSI at trial. During trial, the jury heard testimony from the victim, A.R. A.R. testified regarding four sexual encounters with Appellant at his residence on Mill Road. Specifically, A.R. testified that Appellant asked her to perform oral sex in the living room of the residence. N.T. Trial, 9/21/21, at 21-22. A.R. then testified that Appellant performed oral sex on her in the laundry room of the residence and in a side lawn. *Id.* at 24-25; 33. The jury heard further testimony from A.R. about an encounter taking place between Appellant and A.R. in Appellant's basement, in which Appellant digitally penetrated A.R.'s anus. *Id.* at 29-31. A.R. also testified that Appellant performed oral sex on her in her bedroom in a trailer on Baker Road. *Id.* at 36-37. At the close of its direct-examination, the Commonwealth elicited the following testimony:

> **Q:** Now, I'm going to ask you, told us about a number of different types of things that [Appellant] did to you and I'm going to try and go through those. Okay? You told us that there were times that he performed oral sex on you; is that right?
>
> **A:** Yes.

**Q:** And in that time period when you were between the ages of 9 and 12, about how often was that specific thing happening, him performing oral sex on you?

**A:** Are you asking how many times?

**Q:** How many times or how often?

**A:** Just about every chance that he got when I would see him and my mom wasn't around, that was just something that we did as a normal thing.

**Q:** Do you have any idea how many times that happened?

**A:** Too many for me to remember.

**Q:** Would you say it was more or less than 20 times?

**A:** At least 20 or more.

*Id.* at 44-45.

Based upon our review of the record, we conclude that the Commonwealth has met its burden of establishing Appellant's guilt beyond a reasonable doubt as to ten counts of IDSI. *See James*, 297 A.3d at 764; *Diaz*, 152 A.3d at 1047. The record specifically reflects that A.R. testified in detail regarding five sexual encounters with Appellant at either his residence or A.R.'s family's trailer. A.R. testified more generally to other incidents, and also told the jury that sexual encounters between herself and Appellant occurred in excess of twenty times. This testimony permitted the jury to reasonably infer that Appellant committed IDSI ten times. *See James*, 297 A.3d at 764. Accordingly, we find that the Commonwealth met its burden of establishing beyond a reasonable doubt that Appellant committed IDSI ten times; therefore, Appellant is not entitled to relief.

## SVP Designation

Appellant next raises a challenge to the sufficiency of the evidence underlying his SVP designation. Appellant argues that the trial court erred in designating him as an SVP because there was "no factual basis to make that determination when [Appellant] had over ten years of non-detection, and there was only evidence of his abuse against a single victim." Appellant's Brief at 20.

In reviewing an SVP designation, we must determine whether the Commonwealth presented clear and convincing evidence that the defendant meets the statutory definition of an SVP. *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015). "As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth [as verdict winner]." *Id.* (citation omitted).

To prove a defendant is an SVP, the Commonwealth must first establish that the defendant was convicted of a sexually violent offense. Then the Commonwealth must prove that the defendant has "a mental abnormality or personality disorder that makes [them] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. The statute defines "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* The

defendant's conduct must be "predatory," which the statute defines as "[a]n act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*; ***Commonwealth v. Stephens***, 74 A.3d 1034, 1038 (Pa. Super. 2013); ***see also Commonwealth v. Geiter***, 929 A.2d 648, 651 (Pa. Super. 2007).

In determining whether an individual meets the definition of an SVP, the SOAB evaluates the following factors:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b).

Here, the trial court concluded that there was sufficient evidence to support Appellant's designation as an SVP. *See* Trial Ct. Op. at 29-31. In reaching that conclusion, the trial court explained:

Based on Dr. Mapes' report and testimony, there are ample reasons to declare Appellant an SVP. Appellant committed multiple enumerated offenses over an extended period, approximately more than three (3) years. He committed various sexual offenses, and the offenses were against a single minor [for] whom he acted as a caregiver [] at times. Additionally, there was an approximately thirty-six (36) year difference in ages between [A.R.] and Appellant. As opined by Dr. Mapes, Appellant squarely meets the criteria to be diagnosed with pedophilic disorder under the DSM-5[.]

* * *

As for predatory behavior, [the trial court placed] great emphasis on the fact Appellant, as a former state trooper, committed these offenses and continued to commit them for over three (3) years and attempted to blame [A.R.] for his actions when confronted.

Dr. Mapes opined:

From the totality of information, it was my opinion that the sexual relationship started at an early onset in their relationship. And then at one point, he was trying to convince [J.R.] to allow [A.R.] to move to Texas with him, so he could adopt her. Again, the totality of information showed him getting [too] close to [A.R.] and repetitively offending. And based upon that, it was my opinion that the instant offense meets the predatory behavior criteria.

- 20 -

[N.T. SVP Hr'g, 8/3/22, at 22.]

Despite Appellant offering his own expert, Dr. [] Lorah's testimony did not refute the facts, report, and diagnosis as attested by Dr. Mapes. Appellant and his expert would have [the trial court] accept there "are no facts to support the finding of SVP" because his offenses against a single victim were not detected for ten (10) years. The fact Appellant committed the offenses for over three (3) years against a minor [for] whom he was entrusted to care [] did not affect Dr. Lorah's expert opinion in evaluating the statutory standards, despite such behavior matching the statutory definition of predatory. Appellant's contention is utterly without merit and is rebutted by Dr. Mapes' report, testimony and the law surrounding SVP determinations.

Dr. Mapes specifically testified to Appellant's mental abnormality or personality disorder [as] follows:

\* \* \*

At the time, he was over 16. He was more than five years older than [A.R.] The offenses occurred over a three to four year period of time for more than six months. [A.R. was] under age. . . . [S]he was between the ages of nine and 12 when the offending occurred. As a result of his sexual interest with [A.R.], he has been incarcerated, which will affect multiple areas of his life. Accordingly, he meets DSM-5 criteria for the diagnosis of pedophilic disorder.

N.T. SVP Hr'g at 16-17.

Dr. Mapes further testified to Appellant's risk of re-offending. "An adult male who commits multiple offenses against an underage victim over approximately a three to four year period of time is considered higher risk for reoffending." [*Id.* at 19.] "One who suffers from pedophilic disorder and who commits multiple offenses over [a] three to four year period of time is much more likely to reoffend [than] as someone who does not suffer from that disorder." *Id.* at 20-21.

*Id.* (some citations omitted and formatting altered).

Based on our review of the record and viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that the

SOAB report contains clear and convincing evidence that Appellant has mental abnormalities and disorders that make him likely to engage in predatory sexually violent offenses. *See Hollingshead*, 111 A.3d at 189-90. Therefore, we conclude that Appellant's challenge to the sufficiency of the evidence supporting his designation as an SVP is meritless and no relief is due.

**Evidentiary Issues at the SVP Hearing**

Next, Appellant contends that the trial court "erred in overruling [] Appellant's objections to the Commonwealth's line of hypothetical questioning of Dr. [Christopher P.] Lorah[, PhD,] after the Commonwealth conceived of hypotheticals and then attributed them to another expert without any basis." Appellant's Brief at 22 (emphasis added). Although Appellant acknowledges that he referred to Dr. Mapes, rather than Dr. Lorah, in his Rule 1925(b) statement, he argues that it was a mistake. Further, he asserts that the trial court "recognize[d] the minor error and acknowledge[d] that [] Appellant most likely intended 'Dr. Lorah.' For this reason, this issue is not waived." *Id.* at 22 n.8.

The Commonwealth responds that Appellant has waived this issue because his Rule 1925(b) statement identified a claim concerning "hypothetical questioning of Dr. [Bruce] Mapes[, PhD,] not Dr. Lorah." Commonwealth's Brief at 65 (emphasis in original).

In its Rule 1925(a) opinion, the trial court does note that "Appellant objected to the Commonwealth's line of questioning of Dr. Lorah, not Dr. Mapes." Trial Ct. Op. at 34. The court further noted that Appellant ordered

the SVP hearing transcript on September 30, 2022, and received it on November 23, 2022, while filing his Rule 1925(b) statement on October 25, 2022. *Id.* n.15. Critically, "Appellant did not seek to amend his statement of errors or seek an extension of time to file with aid of the transcript." *Id.*

The Pennsylvania Rules of Appellate Procedure require appellants to, when ordered by the trial court, file a concise statement of errors complained of on appeal which identifies "each error that the appellant intends to assert with sufficient detail to identify the issue raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Failure to do so could result in waiver. Pa.R.A.P. 1925(b)(4)(vii). "[A]n appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." *Commonwealth v. Arnold*, 284 A.3d 1262, 1279 (Pa. Super. 2022) (citation omitted). Waiver is not required, however, in cases in which our ability to effectuate meaningful appellate review is not hindered. *Commonwealth v. Landis*, 277 A.3d 1172, 1182 (Pa. Super. 2022).

In the instant case, it is clear from the record that Appellant identified the incorrect witness in his Rule 1925(b) statement. Despite Appellant's failure to correct his Rule 1925(b) statement, in this instance, we find that our ability to effectuate meaningful appellate review has not been hindered; therefore, we will not deem this issue to be waived and we shall proceed to review this issue on the merits. *See id.*

As noted above, Appellant's issue surrounds the Commonwealth's cross-examination of Dr. Lorah. Specifically, Appellant contends that "the Commonwealth framed hypotheticals as if another non-testifying, non-present expert[, Dr. Hanson,[4]] was to ask the hypotheticals. Although the questions were cloaked as expert opinion, they were just mere assertions by the Commonwealth[.]" Appellant's Brief at 22. Our standard of review is abuse of discretion. *DiStefano*, 265 A.3d at 297.

This Court has held:

[I]t is well-settled that the Commonwealth may ask an expert a hypothetical question so long as there is evidence of record supporting the hypothetical. [A]n expert may give an opinion in response to a hypothetical, provided the set of facts assumed in the hypothetical is eventually supported by competent evidence and reasonable inferences derived therefrom.

*Commonwealth v. Clemat*, 218 A.3d 944, 957-58 (Pa. Super. 2019) (citations omitted; some formatting altered).

The trial court reached the following conclusion:

A thorough and careful review of the record shows Appellant's claim fails. . . . [T]he Commonwealth did not conceive hypotheticals and attribute them to another, non-testifying expert. Rather, as permitted by the rules of evidence, on cross-examination, the Commonwealth probed Appellant's expert and his knowledge of information forming the basis of his opinion.

Appellant's expert acknowledged on record the Static-99R individualized risk assessment helped form the basis of his opinion. Dr. Lorah credited Dr. Hanson as the author of the Static-99R and many supporting articles cited in his own report concerning the case at bar. Appellant further conceded

---

[4] Dr. Hanson's first name does not appear in the record.

Pennsylvania law does not require individualized risk assessments such as the Static-99R.

Even if the questions posed by the Commonwealth are considered "hypotheticals attributed to another expert," they are not "without any basis," as Appellant asserts in his Statement of Errors. Dr. Lorah explicitly stated on record his opinion differs from Dr. Mapes' opinion based on his personal decision to perform and score the Static-99R, even if not required under Pennsylvania law. The Commonwealth, on cross-examination, questioned Dr. Lorah regarding his knowledge of individualized risk assessments such as the Static-99R and Pennsylvania law. The Commonwealth specifically asked Dr. Lorah if he is aware the author of the Static-99R previously testified contrary to what Dr. Lorah put in his report and then testified to. When questioned further, Dr. Lorah recognized and acknowledged if the Static-99R guidelines were adhered to as written by Dr. Hanson, a different result would have been reached. For Appellant to claim this is improper questioning flies in the face of the purpose of cross-examination.

Trial Ct. Op. at 37-38.

Based on our review of the record, we can discern no abuse of discretion on the part of the trial court. The record reflects that Appellant's expert witness, Dr. Lorah, referenced the Static-99R in his report. N.T. SVP Hr'g at 49.[5] On cross-examination, Dr. Lorah testified that based, in part, on the Static-99R, he believed Appellant to be a low risk for re-offending. *Id.* at 59. Dr. Lorah further testified that risk assessments such as the Static-99R are appropriate and that he felt "obligated to inform the [trial court] of the status of the literature." *Id.* at 62. On this basis, the trial court permitted the Commonwealth to cross-examine Dr. Lorah using hypotheticals regarding Dr.

_____

[5] As noted by Dr. Lorah, Dr. Mapes also referenced the Static-99R. N.T. SVP Hr'g at 30-31. Dr. Mapes testified that the Static-99R is an individualized risk assessment; however, it is not used in Pennsylvania under SORNA. *Id.* at 31.

- 25 -

Hanson because he was the author of the report used by Dr. Lorah in his analysis. *Id.* at 68-69. Based on this record, we find that the trial court did not abuse its discretion, as the hypotheticals employed by the Commonwealth had an evidentiary basis in the record. *Clemat*, 218 A.3d at 957-58. Accordingly, Appellant is not entitled to relief.

**Discretionary Aspects of Sentence**

In his final three issues, Appellant raises challenges to the discretionary aspects of his sentence. Appellant first contends that the trial court exhibited bias and ill will toward Appellant when it stated that Appellant was not entitled to a volume discount for multiple criminal acts. Appellant's Brief at 29. Appellant next argues that the trial court's "sentence double counted the aggravating factors included in the sentencing guidelines to impose a sentence that was an upward departure from the aggravated range[,]" of the sentencing guidelines. *Id.* Finally, Appellant alleges that the trial court's aggregate sentence amounted to a *de facto* life sentence, and that the trial court failed to "adequately account for [Appellant's] mitigating factors and his advanced age at the time of sentencing." *Id.* at 30-31.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for

- 26 -

allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record confirms that Appellant preserved his sentencing claims in a post-sentence motion, filed a timely notice of appeal, and included the issues in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief. Additionally, we conclude that Appellant has raised a substantial question for review. *See Commonwealth v. Bankes*,

286 A.3d 1302, 1306 (Pa. Super. 2022) (holding that "the decision to sentence consecutively raises the aggregate sentence to . . . an excessive level in light of the criminal conduct" raises a substantial question); ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020) (holding that a claim that a sentencing court "double counted factors already considered in the sentencing guidelines raises a substantial question"); ***Derry***, 150 at 995 (Pa. Super. 2016) (holding that sentences which are the product of, *inter alia*, bias or ill will, are "necessarily contrary to the fundamental norms of sentence," thereby raising a substantial question).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> > In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> 42 Pa.C.S. § 9781(c).
>
> In reviewing the record, we consider:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> > (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].
>
> > (3) The findings upon which the sentence was based.
>
> > (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S. § 9781(d).

***Commonwealth v. Raven***, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (some citations omitted and some formatting altered).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of [the] offense in relation to [the] impact on [the] victim and [the] community, and [the] rehabilitative needs of the defendant." ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered).  Additionally, the trial court "must consider the sentencing guidelines." ***Id.*** at 848 (citation omitted).  Where a PSI report exists, this Court will "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. [An a]ppellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." *Commonwealth v. Brown*, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citations omitted and formatting altered).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. *See Commonwealth v. Kurtz*, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, 306 A.3d 1287, 289 MAL 2023 (Pa. filed Oct. 30, 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of [the] sentencing court where [the] lower court was fully aware of all mitigating factors[.]" *Id.* (citation omitted).

Here, the trial court addressed Appellant's sentencing claims as follows:

The sentencing court is in the best position to determine the proper penalty for a particular offense. Furthermore, the sentencing court, in its discretion, may order consecutive sentences based upon an evaluation of the individual circumstances of the case. Here, the sentencing court did exactly that.

The sentencing court did not impose a *de facto* life sentence. The sentencing court adequately accounted for Appellant's mitigating factors and his advanced age in crafting his sentence and did not abuse its discretion.

\* \* \*

Appellant perpetrated various sexual offenses against a child, who was left in his care, for over three years. When confronted, Appellant showed no remorse and accepted no responsibility as evidenced by Appellant's own words heard on audio recording during the trial. Rather, Appellant repeatedly attempted to blame [A.R.] for his own actions, as indicated by the audio, in the pre-sentence investigation and illuminated in the Commonwealth's sentencing memorandum. Never has Appellant accepted responsibility for his actions.

* * *

Most importantly, [Appellant] fails to consider and acknowledge the impact his actions have had on the victim, [A.R.] Appellant entered [A.R.'s] life after her mother and father were arrested for possession with intent to deliver narcotics and Appellant was a state police [trooper] involved in the investigation. Appellant forged a sexual relationship with [A.R.'s] mother which ultimately led to Appellant gaining access to [A.R.] It was from this position of trust that Appellant repeatedly sexually abused his victim for approximately three years.

Although [A.R.] elected not to speak at Appellant's sentencing, she did provide a letter to be read and was present in the courtroom. From the moment the victim advocate began reading, [A.R.] was visibly upset but remained in the courtroom determined to finish the long process Appellant began in private.

Trial Ct. Op. at 47-48.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court ordered a PSI report, which it reviewed prior to sentencing. *See* N.T. Sentencing Hr'g, 8/3/22, at 122. Therefore, we presume that the trial court was fully aware of the mitigating factors and considered them when imposing Appellant's sentence. *See Watson*, 228 A.3d at 936; *see also Kurtz*, 294 A.3d at 536. Although Appellant claims that the trial court "gave undue weight to Appellant's aggravating factors," we will not re-weigh the trial

court's consideration of the relevant sentencing factors on appeal. *See Kurtz*, 294 A.3d at 536. Further, as noted previously, it is well settled that defendants convicted of multiple criminal offenses are not entitled to a volume discount on their aggregate sentence. *See Brown*, 249 A.3d at 1216; *see also Commonwealth v. Pisarchuk*, 306 A.3d 872, 881 (Pa. Super. 2023).[6] For these reasons, we conclude that Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2024

---

[6] To the extent Appellant relies on *Commonwealth v. Anderson*, 224 A.3d 40 (Pa. Super. 2019) in support of his *de facto* life sentence claim, we note that *Anderson* addresses *de facto* life sentences in the context of juvenile murder defendants and is therefore inapplicable to the instant case. *See Anderson*, 224 A.3d at 40-41. Just as Appellant is not entitled to a volume discount for multiple crimes by having an aggregate sentence run concurrently, he is likewise not entitled to a "seasonal discount because he committed his crimes in the winter of his life." *Commonwealth v. P.B.B.*, 2020 WL 3225518 at *10 n.5 (Pa. Super. filed June 15, 2020) (unpublished mem.); *see* Pa.R.A.P. 126(b) (stating that we may cite to unpublished memoranda filed after May 1, 2019 for persuasive value).