J-S01012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN COFFMAN | : | |
| | : | |
| Appellant | : | No. 965 WDA 2025 |

Appeal from the Judgment of Sentence Entered March 22, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007005-2021

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  March 30, 2026**

John Coffman appeals from the aggregate judgment of sentence of eighteen to thirty-six months of incarceration following his guilty plea to one count each of indecent assault and harassment.  We affirm.

From October 2020 through June 8, 2021, Appellant subjected Darby Nichols to multiple instances of unwelcome and nonconsensual sexual contact. *See* N.T. Open Plea Proceeding, 12/12/22, at 3-4.  By way of background, Appellant and his sister asked Ms. Nichols to provide home healthcare for their ailing mother.  They knew Ms. Nichols was a longtime friend to their mother, and that Ms. Nichols was a certified nurse's assistant who had previously worked in a nursing home for senior citizens.  During the period in question,

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant made frequent visits to his mother's home when Ms. Nichols was present.

On April 22, 2021, Ms. Nichols was at home when she received a phone call from Appellant, who informed her that his mother had fallen on the floor in her bedroom. As a result, Ms. Nichols proceeded directly to the Jankowski residence. When Ms. Nichols arrived, she entered the second-floor bedroom and noticed that Appellant was in the room, with his mother still lying on the bedroom floor. When Ms. Nichols prepared to assist her, Appellant came up behind Ms. Nichols, put his arms around her, and grabbed each of her breasts with his hands.

Approximately two weeks later, Ms. Nichols was at the mother's residence and Appellant was again present. While Ms. Nichols was standing at the kitchen sink washing dishes, Appellant again surprised her from behind and fondled her breasts.

Ms. Nichols subsequently lodged a complaint to the local police. Therein, she asserted, *inter alia*, that Appellant had begun repeatedly contacting her and making sexual demands while doing so. Based on the foregoing, Appellant was charged with five counts: one count of stalking and two counts each of harassment and indecent assault.

Following negotiation, Appellant agreed to plead guilty to one count of harassment and one count of indecent assault, in exchange for the Commonwealth withdrawing the remaining charges. *Id*. at 5. Additionally, the Commonwealth consented to waiving the mandatory minimum twenty-

five-year prison sentence pursuant to 42 Pa.C.S. § 9718.2 and to leave sentencing to the discretion of the trial judge. At the conclusion of the open plea proceeding, the trial court revoked Appellant's bond and deferred sentencing pending preparation of a presentence investigation ("PSI") report.

At the sentencing hearing, evidence was presented which showed that Appellant posed a danger to Ms. Nichols. Particularly, the Commonwealth introduced two intercepted phone calls and one letter written by Appellant after he was arrested for the instant charges. As will be discussed in more detail below, Appellant threatened Ms. Nichols in his communications with other individuals. The court further reviewed the PSI report on the record, which revealed that Appellant had a prior record score of RFEL.

Ultimately, the trial court imposed a term of imprisonment of twelve to twenty-four months for indecent assault and six to twelve months for harassment. The sentence for each charge fell within the standard guidelines based on Appellant's prior record, but also constituted the statutory maximum. The trial court further ordered the sentences to run consecutively for an aggregate of eighteen to thirty-six months in prison.

Appellant's counsel did not file a post-sentence motion or a notice of appeal. As a result, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA") and the court appointed new counsel to represent Appellant. Appellant submitted an amended PCRA petition, and the Commonwealth responded, conceding the issue of ineffective assistance of counsel insofar as previous counsel failed to file a motion to reconsider

sentence. The trial court entered an order granting limited PCRA relief in the nature of an appeal *nunc pro tunc*, but did not allow the filing of a post-sentence motion. Appellant's counsel moved the court to reconsider the order, and sought additional post-sentence motion relief, but the court never ruled on the motion for reconsideration.

Appellant filed a notice of appeal and this Court issued a judgment order, remanding the case back to the trial court with instructions to reinstate Appellant's post-sentence rights. *See* ***Commonwealth v. Coffman***, 341 A.3d 114, 2025 WL 1455403, at *2 (Pa.Super. 2025) (non-precedential decision). The trial court complied and ultimately denied Appellant's properly filed post-sentence motion to reconsider sentence.

This timely appeal ensued. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court authored a responsive Rule 1925(a) opinion. In this Court, Appellant has narrowed his issue on appeal to a single question:

> Is [Appellant]'s sentence to the statutory maximum at each count, which was then run consecutively, manifestly unreasonable and excessive, because it fails to account for his rehabilitative needs and his desire and ability to enter back into society as a productive, law-abiding member, in addition to other mitigating sentencing factors when [the trial court] focused solely on the crime committed, the victim, and also exhibited a bias, hostility, and ill will towards [Appellant] as evidenced by [the court]'s statements at sentencing?

Appellant's brief at 6.

- 4 -

Appellant's challenge implicates the discretionary aspects of his sentence, to which "the right to appellate review . . . is not absolute." *Commonwealth v. Brown*, 249 A.3d 1206, 1210 (Pa.Super. 2021) (cleaned up). Rather, before this Court may consider the merits of such a claim, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Lawrence*, 313 A.3d 265, 284 (Pa.Super. 2024) (cleaned up).

We are satisfied that Appellant timely appealed, preserved his challenge in a motion for reconsideration of sentence, and included a Rule 2119(f) statement in his brief. Thus, we proceed to analyze whether Appellant presents a substantial question, which "exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Brown*, 249 A.3d at 1211.

In his Rule 2119(f) statement, Appellant argues that he received an unreasonable sentence that is manifestly excessive under the circumstances of his case, violating both 42 Pa.C.S. § 9781(c) and the fundamental norms underlying the sentencing process. *See* Appellant's brief at 12-13. He

- 5 -

maintains that his sentence is clearly unreasonable because, while the minimum sentence imposed was within the standard range of the sentencing guidelines, the top end constituted the statutory maximum. *Id*. at 14. Appellant contends that the circumstances of this case do not justify a statutory maximum sentence, and that the trial court failed to offer specific reasons for imposing the maximum term of incarceration. *Id*.

We conclude that Appellant has presented a substantial question for our review. *See Commonwealth v. Swope*, 123 A.3d 333 (Pa.Super. 2015) (finding that a substantial question is raised when the claim of excessiveness includes a challenge to the imposition of consecutive sentences as unduly excessive, together with a contention that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence); *Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa.Super. 2011) (holding that a claim that the trial court failed to offer specific reasons for imposing the maximum allowable sentence is a substantial question permitting appellate review). Accordingly, we turn to the merits of Appellant's argument.

We review Appellant's issue in light of the following legal precepts:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Davis*, 241 A.3d 1160, 1177-79 (Pa.Super. 2020) (cleaned up).

In imposing a sentence, the "court must consider the factors set out in 42 Pa.C.S. § 9721(b), including the protection of the public, the gravity of the offense in relation to the impact of the victim and the community, and the rehabilitative needs of the defendant." *Lawrence*, 313 A.3d at 286 (cleaned up). The court may also consider a defendant's prior convictions if those factors "are used to supplement other extraneous sentencing information." *Commonwealth v. Wallace*, 244 A.3d 1261, 1280 (Pa.Super. 2021). Importantly, this Court may not reweigh sentencing elements "where the lower court was fully aware of all mitigating factors." *Lawrence*, 313 A.3d at 286 (cleaned up).

When the court imposes a sentence that is within the standard range of the sentencing guidelines, "Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.Super. 2019). Additionally, where the court has reviewed a PSI report, "it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein." *Brown*, 249 A.3d at 1212 (cleaned up).

Appellant contends that the trial court erred in imposing an excessive sentence without considering his rehabilitative needs or other mitigating factors, and further that the court exhibited bias and ill-will. *See* Appellant's

brief at 6, 11. With respect to the latter, the majority of Appellant's claim derives from the following statement from the trial judge at sentencing:

> [Appellant], this is the first time in over [seventeen] years of my being a judge -- and I've been in the criminal justice system over [forty] years. This is the first time I have felt as a judge there just isn't enough time in these charges to keep you in jail. I don't know how your lawyer managed to negotiate this down to what he did, but he did. And you're getting the maximum jail time on this. The maximum. And if I had more time, I'd give it to you. You are an absolute risk to this person. I don't believe any of this nonsense about I have a bad temper. I don't believe it. You might have a bad temper, but that's not the reason you did what you did. And shooting your mouth off. You've been to prison. You've been to jail a number of times. You just won't change.
>
> [Commonwealth attorney,] I don't know how you agreed to this. I'm not saying you were wrong. But to me, it's not enough time to protect this person from this defendant. I've never said this in a case before. Ever.

*See* N.T. Sentencing, 3/22/23, at 33-34. Based on this language, Appellant maintains that the court overlooked certain mitigating factors, such as his family and fiancé's support, work history, and efforts for self-betterment including participating in counseling, in favor of imposing a punishment as harsh as possible within the confines of the plea agreement. *See* Appellant's brief at 22-23.

Our review of the sentencing record does not support Appellant's contention of bias or ill-will by the trial court, notwithstanding the cited statement. While the court appeared to express frustration that the penalty it could impose was hampered based on the plea agreement favorable to Appellant, it is clear that the court nevertheless based its sentence on the

offenses committed, Appellant's prior criminal record, the protection of the community, and the credible threat Appellant posed to the victim.

Of note, the prosecutor read into the record at sentencing a letter sent by Appellant to his incarcerated brother on September 20, 2021. The letter indicated that Ms. Nichols should move out of the state once the case is finished because Appellant's acquaintances "are not happy on what [Ms. Nichols] did to [Appellant] . . . and [one of them] wants [Ms. Nichols's] blood." *See* N.T. Sentencing, 3/22/23, at 37.

Next, evidence of an intercepted telephone call between Appellant and his brother was recited on the record. The transcript of the phone call stated, "I'm just telling you now, I'm getting that bitch beat up when I'm done with this case. It's already in the works. She's going to be in the fucking hospital." *Id*. Appellant's brother even interrupted and said, "Keep talking, you know, this phone call's recorded, right?" to which Appellant responded, "I don't give a fuck." *Id*.

Finally, the Commonwealth read aloud the transcript of another phone call that was intercepted between Appellant and his brother, wherein Appellant proclaimed: "If I go to jail over a fucking lie for something I didn't do, when I come out, I'm going to make damn sure I fucking commit a crime. It's going to be a crime that everybody is going to remember on that bitch." *Id*. at 38.

Hence, it is apparent that the trial court opted to sentence Appellant to consecutive, statutory maximum penalties for harassment and indecent assault because, among other things, it had a grave concern that Appellant

continued to pose a threat to Ms. Nichols. Indeed, throughout sentencing, defense counsel strongly urged the trial court to consider house arrest, electronic home monitoring, or work release. The trial court's response to that consideration was: "And how do I take the risk that he doesn't act on the threats he made? How do I, in good conscience put this person in our community at this risk?" *Id*. at 31. The record clearly indicates the trial court's greater concern that Appellant remained a significant danger to the victim. The court elucidated:

> This is more serious than just the general risk to the community. This is a risk to a particular person who he threatened numerous times, specifically . . . [a] guy who's been in and out of prison, who has multiple criminal offenses, and he still does this. He has terroristic threats before in his past. He just does what he wants to do. And he wants to blame it on his temper.

N.T. Sentencing, 3/22/23, at 32.

The record demonstrates that the court was not exhibiting any partiality, prejudice, bias, or ill will towards Appellant. *See Davis*, 241 A.3d at 1177-79. This is evinced by the fact that at one point during sentencing, Appellant told the court, "Well, more likely I'll just do the whole thirty-six months." N.T. Sentencing, 3/22/23, at 43. The trial judge responded:

> I don't know that. It's not up to me. And I will tell you now that I do not – whenever I get a request from the state parole people as to whether I'm for or against or have no comment about the defendant being considered for parole, I always indicate I have no comment, because you're in their system. They have – they're evaluating you currently. It might be a year from now when they send me that. And I don't know what you've been doing for that last year, so it's up to them to make that decision. I never say

no. I say I have no opinion. So, it's up to them. It's how you perform there.

*Id*. at 44. This statement reflects that treatment of Appellant by the sentencing court was the same as other similarly-situated defendants.

Finally, we reiterate that when, as here, the court sentenced Appellant within the standard range of the sentencing guidelines, it was presumptively reasonable. *See Hill*, 210 A.3d at 1117. The trial court had the benefit of a PSI report and reviewed the sixteen-page report on the record. *See* N.T. Sentencing, 3/22/23, at 3. As such, we presume that it properly weighed all available mitigating information. *See Brown*, 249 A.3d at 1212. The record additionally does not indicate that the court failed to offer specific reasons for imposing the maximum allowable sentence. *See Coulverson*, 34 A.3d at 143. To the contrary, Appellant's repeated threatening remarks toward Ms. Nichols upholds the court's opinion that he lacked the ability to enter back into society as a productive, law-abiding citizen earlier than the sentence imposed. This Court may not re-weigh the factors that the sentencing court already appraised. *See Lawrence*, 313 A.3d at 286.

Accordingly, we conclude that the court did not abuse its discretion in sentencing Appellant to an aggregate term of eighteen to thirty-six months of incarceration for indecent assault and harassment. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  3/30/2026