J-S25002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAMON GONZALES | : | |
| | : | |
| Appellant | : | No. 214 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 31, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006221-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAMON GONZALEZ | : | |
| | : | |
| Appellant | : | No. 263 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 31, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003937-2018

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED SEPTEMBER 4, 2025**

Ramon Gonzales (Appellant)[1] appeals from the judgments of sentence

entered in the Court of Common Pleas of Philadelphia for his convictions at

_____

[1] The record contains conflicting information regarding whether Appellant's name is spelled "Gonzales" or "Gonzalez." The sentencing court stated that the court stenographer incorrectly spelled his last name ending with a "z" when the correct spelling ends in an "s." **See** Sentencing Court Opinion,
*(Footnote Continued Next Page)*

two separate docket numbers. At docket number CP-51-CR-0003937-2018, Appellant pleaded guilty to possession with intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30). At docket number CP-51-CR-0006221-2022, Appellant pleaded guilty to attempted murder, aggravated assault, and person not to possess a firearm.[2] Appellant entered his guilty pleas and was later sentenced for his convictions at both docket numbers on the same day. The sentencing court imposed an aggregate sentence of 14 ½ to 29 years of incarceration. On appeal, Appellant asserts that the sentencing court imposed an excessive and unreasonable sentence by failing to adequately consider his rehabilitative needs and focusing disproportionately on the gravity of the offense. Because Appellant's assertion is unsupported by the record, we affirm.

For each docket number, the Commonwealth stated the facts that supported the guilty pleas at the guilty plea hearing on June 16, 2023. For docket number 3937-2018:

> On March 26th of 2018, at approximately 12:10 a.m., Narcotics Field Unit officers conducted a plainclothes surveillance at the 3000 block of North Front Street in the city and county of Philadelphia. During the time frame of 12:10 and 12:40 a.m., Narcotics Field Unit officers observed [Appellant] conducting hand-to-hand transactions. These were confirmed based on seizure Page 14 analysis to be PCP, which is a Controlled II substance. Additionally, Narcotics Field Unit officers also recovered a stash that was recovered from a vacant lot on North

---

4/3/24, at 3 n.5. However, his name is spelled ending with a "z" throughout his appellate brief. **See generally** Appellant's Brief. For the sake of consistency and simplicity, we refer to him as Appellant.

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), and 6105(a)(1), respectively.

Lee Street which contained additional PCP. The total weight of PCP in this case, Your Honor, was approximately between two and a half and ten grams of PCP.

Sentencing Court Opinion, 4/3/24, at 5 (quoting N.T., 6/16/23, at 14-15).

For docket number 6221-2022:

On July 1st of 2022, at approximately 9:28 p.m., [Appellant] was in the area of Front and Clearfield Street in the city and county of Philadelphia. While at that location at that date and time, [Appellant] approached the complaining witness in this case, Mr. Andrew Acevedo. [Appellant] approached the complainant and pulled out a firearm and shot Mr. Acevedo once in the neck, once in the stomach, and once in the buttocks. Mr. Acevedo was transported to Temple Hospital. [Appellant] shot Mr. Acevedo with the intent to kill him.

Additionally, Your Honor[,] after the shooting, detectives from the Shooting Investigation Group went to [Appellant's] residence and executed a search warrant. That is at 105 West Clearfield Street. In the kitchen area they recovered two live .38 caliber rounds. They also recovered a live 9mm round. Additionally, detectives recovered two separate white T-shirts and a pair of black shorts. And, additionally, they also recovered plain white sneakers which [Appellant] was wearing at the time that he committed the offense.

These items were tested for DNA and gunshot residue [(GSR)]. The [GSR] report states that there were [GSR] particles on one of the white T-shirts. There was one particle characteristic of GSR and there were 3 two-component particles. Additionally, for the inside pockets of the black shorts, there was 2 two-component particles of GSR. Additionally, in regards to the DNA report, the DNA comparison to the shirt that had the GSR on it stated that excluding an identical twin, [Appellant] was the major source of DNA on that shirt that had the gunshot residue on it. Additionally, in regards to the shorts, the DNA report stated that the DNA mixture originated from [Appellant] and two random unrelated individuals is 7.294 billion times more likely to occur than if it originated from three random unrelated individuals in the Caucasian population, 16.31 billion times more likely to occur than if it originated from three random unrelated individuals in the African American population, and 3.351 billion times more likely

to occur than if it originates from three random unrelated individuals in the Hispanic population.

Additionally, Your Honor, a firearm was recovered from the block of 100 West Clearfield Street. What was recovered was a firearm; that was a 9mm. This was the same caliber as the 9mm shell casings that were found at the crime scene. And [Appellant] is prohibited from carrying a firearm due to a prior felony conviction.

*Id.* at 3-4 (quoting N.T., 6/16/23, at 11-14) (footnote and quotation marks omitted) (paragraphs added).

A sentencing hearing for both docket numbers was held on August 31, 2023. The Commonwealth and defense counsel reached a sentencing agreement that Appellant would not receive an aggregate sentence exceeding 15 to 30 years imprisonment. The sentencing court imposed an aggregate sentence of 14 ½ to 29 years' incarceration. He was sentenced to 14 ½ to 29 years for attempted murder and the sentences for the other offenses either merged or ran concurrently.[3]

On September 5, 2023, Appellant filed a post-sentence motion requesting that the sentencing court reconsider the sentence imposed. The post-sentence motion was denied by operation of law on January 5, 2024.[4]

---

[3] The aggravated assault charge merged. The concurrent sentences for possession of a firearm prohibited and PWID were 5 to 10 years and 2 ½ to 5 years, respectively.

[4] A post-sentence motion is deemed denied by operation of law if it is not decided on within 120 days and the clerk of courts shall enter an order on behalf of the court that the post-sentence motion is deemed denied. *See* Pa.R.Crim.P 720(B)(3)(a), (c). The 120th day from the filing of the motion was January 5, 2024. However, the clerk of courts did not enter the order until
*(Footnote Continued Next Page)*

- 4 -

Appellant timely appealed. He filed a court ordered concise statement of matters complained of on appeal, and the sentencing court issued an opinion in support of its sentence. *See* Pa.R.A.P. 1925(a)-(b).

Appellant raises a single issue for our review.

> The [Sentencing] Court erred and abused its discretion by imposing an excessive and unreasonable sentence without adequate consideration of mitigating factors, such as Appellant's background, trauma, and rehabilitative needs, as required under 42 Pa.C.S.A. § 9721(b).

Appellant's Brief, at 11 (unnecessary capitalization omitted).

Appellant's sole issue is a challenge to the discretionary aspects of sentencing. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Reid*, 323 A.3d 26, 29 (Pa. Super. 2024) (citation omitted). There is a four-part test Appellant must meet to invoke this Court's jurisdiction:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Id.* (brackets and citation omitted).

_____

January 8, 2024. This discrepancy did not impact the timeliness of Appellant's appeal as he filed his notice of appeal on January 8, 2024.

Appellant clearly meets the first three prongs: his notice of appeal was timely filed on the day that his post-sentence motion was filed; he raised the issue in his post-sentence motion; and his brief is not defective. Thus, we consider whether he has raised a substantial question.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Sexton**, 222 A.3d 405, 420 (Pa. Super. 2019) (citation omitted).

In his Pa.R.A.P. 2119(f) Statement, Appellant states that "the sentencing court did not comport with the required sentencing considerations outlined in 42 Pa.C.S.A. § 9721(b)." Appellant's Brief, at 8. Specifically, Appellant claims that the sentencing court failed to adequately consider his rehabilitative needs and focused disproportionately on the gravity of the offense – both of which he claims raise a substantial question. **See id.** at 8-9. The Commonwealth argues that Appellant is merely raising a claim of inadequate consideration of mitigating factors which does not raise a substantial question. **See** Commonwealth's Brief, at 7-8.

"A claim that a sentencing court failed to consider certain mitigating factors does not raise a substantial question that the sentence is inappropriate." **Commonwealth v. Lewis**, 911 A.2d 558, 567 (Pa. Super. 2006) (citations omitted). However, Appellant's contention that the

- 6 -

sentencing court failed to adequately consider his rehabilitative needs and focused disproportionately on the gravity of the offense raises a substantial question. *See Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013). Thus, we proceed to the merits of Appellant's claim.

Following a careful review of the certified record, we conclude Appellant's assertion that the sentencing court failed to adequately consider his rehabilitative needs and focused disproportionately on the gravity of the offense is contrary to the record.

Our standard of review is well-established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted).

> Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A.] 9781(c) and (d). Subsection 9781(c) provides:
>
> > The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
> >
> > > (1) the sentencing court purported to sentence within the guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the guidelines and the sentence is unreasonable.

42 Pa.C.S.[A.] § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation (PSI).

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.[A.] § 9781(d).

***Commonwealth v. Lawrence***, 313 A.3d 265, 285-86 (Pa. Super. 2024) (case citation and brackets omitted). "[W]here the trial court is informed by a PSI, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Verma***, 334 A.3d 941, 947 (Pa. Super. 2025) (citation and alteration omitted).

Here, the defense prepared a mitigation report that explained the physical and mental trauma Appellant suffered at 12 years old when his

family's house burned down, during which he lost consciousness, had to be rescued by firefighters, spent a month in the hospital to treat his severe burns, and never received any psychological intervention or counseling to overcome this traumatic event. *See* Appellant's Brief at 5-6 (citing Mitigation Report, at 2); *see also id.* at 13-14. Additionally, Appellant later acted as the primary caretaker for his girlfriend who was physically impaired from a stroke. *See id.* at 6 (citing Mitigation Report, at 3); *see also id.* at 14.

The sentencing court stated that it considered the PSI and Appellant's mitigation report. *See* N.T., 8/31/23, at 26. Further, the sentencing court stated that Appellant's actions could not be blamed on his childhood trauma while also including as a condition of his incarceration that "he be a part of a therapeutic community to address his trauma. Violence prevention, restorative education, and re-entry counseling[.]" *Id.* at 27-28, 31.

As the sentencing court explained, Appellant's aggregate sentence was well below the guidelines and less than the maximum sentence which was agreed to by defense counsel and the Commonwealth.

> Appellant presented no evidence that [his sentence was inconsistent with a specific provision of the Sentencing Code; or contrary to the fundamental norms which underlie the sentencing process.] In the present case, Appellant's prior record score is 5. Appellant's sentencing guidelines for the lead charge of Attempted Murder, with an offense gravity score of 14 and application of the "Deadly Weapon Used" enhancement recommend a sentence of 210 months to the statutory limit +/- 12 months for the aggravated and mitigated range, respectively. The court's actions were consistent with the Sentencing Code and were not contrary to the fundamental norms of the sentencing process. In fact, the court did exactly what counsel agreed to. The prosecution

requested [the sentencing court] impose an aggregate sentence of 15 - 30 years of state incarceration. The [c]ourt recognized Appellant's mitigation and imposed a sentence of 14 ½ - 29 years of incarceration on the charge of Attempted Murder; a concurrent 5 - 10 years on the charge of [person not to possess a firearm]; and a concurrent 2 ½ - 5 years on the charge of PWID. The court's [] minimum sentence was 30 months below the guidelines and also 6 months below the agreed upon maximum negotiated by the lawyers. In fact, based on the severity of the crime, the guidelines were very high, and the sentence imposed was **_significantly_** below guidelines.

Sentencing Court Opinion, 4/3/24, at 9-10 (emphasis in original).

Further, the sentencing court thoroughly explained its reasoning for fashioning Appellant's sentence.

In the present case, **the court sentenced with the benefit of the mitigation report produced by counsel and the [PSI]**. Prior to imposing sentence, the court provided an on the record statement of the reasons to support the sentence. **Contrary to Appellant's assertions, the court considered Appellant's rehabilitative needs and personal characteristics**. Again, the court considered all the reports that were ordered, the mitigation report, the arguments of counsel and the guidelines. The court further appreciated the fact that Appellant accepted responsibility for his actions and stated his remorse. The sentence imposed acknowledged Appellant's history as well as the severity of the crime. **Appellant's sentencing order included that he be a part of a therapeutic community to address his trauma and be put in programs such as violence prevention, restorative education, and re-entry counseling**.

**_Id._** at 11 (citing N.T., 8/31/23, at 5-7, 26-32) (emphasis added).

Based on our review of the record, and contrary to Appellant's contention, the sentencing court did consider Appellant's rehabilitative needs and did not focus disproportionately on the gravity of the offense. The sentencing court acted well within its discretion in imposing the sentence. Therefore, Appellant is not entitled to relief, and we affirm.

- 10 -

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025