J-S30029-25

2025 PA Super 241

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES SHIELDS | : | |
| | : | |
| Appellant | : | No. 2090 EDA 2024 |

Appeal from the PCRA Order Entered July 10, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001484-2013

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY MURRAY, J.: **FILED OCTOBER 24, 2025**

Charles Shields (Appellant) appeals from the order dismissing his timely first petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] This case returns to us following our remand to the PCRA court for the filing of a supplemental opinion. **Commonwealth v. Shields**, 323 A.3d 181, 543 EDA 2023 (Pa. Super. 2024) (unpublished memorandum) ("**Shields III**"). For the first time in this appeal, Appellant, through new PCRA counsel, raises claims of his prior PCRA counsel's ineffectiveness, pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).[2] After careful review, we vacate the order

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] **Bradley** held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting pro se, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Bradley**, 261 A.3d at 401.
(Footnote Continued Next Page)

dismissing the PCRA petition and remand for consideration of one of Appellant's newly-raised claims of prior PCRA counsel's ineffectiveness.

The **Shields III** Court summarized the facts underlying Appellant's convictions:

> When Dwayne Walters [("Mr. Walters" or "the victim")] awoke in the early afternoon hours of November 17, 2012, his cell phone displayed numerous missed calls from [Appellant]. Around 1:30 p.m., Mr. Walters left his apartment to get a haircut. He walked through the parking lot of his apartment complex towards his rental car, a white Dodge. As he unlocked the car door, Lamar Roane [(Roane)], whom Mr. Walters did not know, approached Mr. Walters and asked him for a light. When Mr. Walters said he did not smoke, Roane grabbed his arm tightly. [Appellant] and his brother, Thomas Shields [(Thomas)],[3] appeared from their concealed locations and approached Mr. Walters and Roane. Thomas [] displayed a long chrome-colored handgun and shoved the barrel into Mr. Walters's stomach. Thomas [] asked Mr. Walters about the money, a reference to $700 he believed Mr. Walters owed him from a drug transaction. Surrounded, and desperate to defend himself, Mr. Walters grabbed the gun. A brief struggle ensued between Mr. Walters and Thomas []. [Appellant] pulled out a black handgun and Thomas told [Appellant] to shoot Mr. Walters. Mr. Walters released his hold on the gun and stopped struggling. [Appellant] took Mr. Walters' car keys, phone, watch

_____

> In **Bradley**, our Supreme Court addressed the dilemma of when a defendant may raise claims of ineffective assistance of PCRA counsel[,] and held that such claims may be raised for the first time during an appeal from the denial of a timely filed first PCRA petition where the PCRA counsel in question represented the defendant until the appeal.

**Commonwealth v. Stahl**, 292 A.3d 1130, 1135 (Pa. Super. 2023) (citing **Bradley**, 261 A.3d at 401-05).

[3] The Commonwealth jointly tried Thomas and Appellant as co-defendants at their jury trial in May 2014. As we discuss *infra*, Thomas's appeal (2072 EDA 2024) is also before this panel.

and wallet[,] and then forced him into the driver's door of his white Dodge. [Appellant] shoved Mr. Walters over the center console into the passenger seat, while Roane and Thomas [] went around the car and entered the rear seats of the vehicle.

Mr. Walters pushed open the passenger door, and as he started to escape, Roane grabbed his jacket. Mr. Walters wiggled out of his grasp and ran[,] while Roane pursued him. When Mr. Walters glanced back to see if anyone was chasing him, he saw [Appellant] and Thomas [] aiming guns at him. He heard two gunshots[,] and a single bullet struck him in the back and exited his chest.

Jennifer Boyle [(Ms. Boyle)], a resident of the [victim's] apartment complex, heard men arguing outside. When she went to the window of her apartment [to investigate], she saw two men fire their guns.[4] ….

Mr. Walters, bleeding profusely from his gunshot wound, entered the back seat of a stopped vehicle occupied by two women and a young boy. He pressed his back against the seat of the vehicle in an attempt to stop the bleeding. The woman in the passenger seat panicked and asked Mr. Walters to exit her car, and he stumbled out and collapsed onto the sidewalk. As he lay there, he saw his assailants exiting the parking lot in his white Dodge rental car.

At approximately 1:39 p.m., Philadelphia Police Officer Brandon Badey received a priority radio call reporting a shooting near 2607 Welsh Road, Philadelphia, Pennsylvania. Upon arriving at the scene, Officer Badey saw Mr. Walters on the ground, holding a blood-soaked towel to his chest. Mr. Walters, who was slipping in and out of consciousness, was unable to communicate to Officer Badey who shot him. Realizing that Mr. Walters' condition was critical, Officer Badey and the second officer on[-]scene placed Mr. Walters in the back of Officer Badey's patrol car and rushed him to the hospital. Mr. Walters was immediately taken to the operating room and, after surgery, he was transferred to the Intensive Care Unit. He remained hospitalized for six weeks.

_____

[4] At trial, Ms. Boyle testified that she "didn't get a good look at the guys that had th[e] guns" and fired at Mr. Walters. N.T., 5/8/14, at 20.

During the investigation of the crime scene, police located two .45 caliber casings, which[,] the Commonwealth's ballistician testified[,] were fired from the same gun. Underneath a nearby car that had a bullet hole in its windshield, investigators found a cell phone that contained several videos and photos that Thomas [] had taken of himself. [Police] obtained search warrants for that cell phone data, including call logs and text messages. [Police] also obtained warrants for the data from Mr. Walters' cell phone and information associated with the telephone numbers of [Appellant], Thomas [], and [] Roane. The search revealed that multiple telephone calls were made to and from Thomas [] and [Appellant], and from Thomas [] to [] Roane, on the day in question. At least four telephone calls and several text messages were sent from Thomas['s] … phone to the victim on the morning of the shooting.

On November 20, 2012, Mr. Walters identified both [Appellant] and Thomas [] from a photographic array. Several days later, [police o]fficers arrested Thomas [] at 1758 East Washington Lane, Philadelphia, Pennsylvania. A search of the residence yielded one silver .45 caliber hollow point bullet. …. On November 29, 2012, [Appellant] surrendered at the U.S. Marshall's office.

*Shields III*, 323 A.3d 181 (unpublished memorandum at 1-5) (citation and original footnote omitted; footnotes added).

On January 11, 2013, a grand jury indicted Appellant on one count each of attempted murder, aggravated assault – serious bodily injury, possessing instruments of crime, attempted kidnapping, persons not to possess firearms, firearms not to be carried without a license, and criminal conspiracy.[5, 6] The

---

[5] 18 Pa.C.S.A. §§ 901(a) & 2502, 2702(a)(1), 907(a), 901(a) & 2901(a), 6105(a), 6106, 903(a).

[6] The conspiracy charge is pertinent to the instant appeal. Regarding this charge, the indictment stated, in relevant part, as follows:
*(Footnote Continued Next Page)*

matter proceeded to a jury trial in May 2014,[7] wherein Appellant and Thomas were jointly tried.[8] Appellant was represented by Gary Server, Esquire (trial counsel).

Following the close of evidence at trial, the trial court instructed the jury on the law. The court instructed, *inter alia*, as follows regarding the conspiracy charge:

> The accused in this case are being charged with Conspiracy. The Commonwealth is alleging that each defendant conspired with the other and with [] Roane. The Commonwealth is alleging that the crime of attempted murder, aggravated assault, **and/or *attempted* kidnap were the objects of the conspiracy**.

N.T., 5/15/14, at 43 (emphasis added); *see also id.* at 42-44 (trial court's remaining instructions on conspiracy). During the charging conference held on the prior day of trial, trial counsel argued that it would be inappropriate to instruct on **conspiracy to commit kidnapping**; the trial court disagreed.

_____

> [Appellant], on or about November 17, 2012, **with the intent of promoting or facilitating the commission of a crime, in this case, the Attempted Murder and/or Aggravated Assault** of [Mr.] Walters, agreed with others that they would engage in conduct that would constitute such a crime, and [Appellant] or another co-conspirator acted in furtherance of that conspiracy.

Indictment, 1/11/13, at 2-3 (unpaginated) (emphasis added).

[7] The PCRA court judge throughout the protracted proceedings, the Honorable Edward Wright, also presided at Appellant's trial.

[8] Prior to trial, Roane pled guilty to certain crimes in connection with the incident. Roane did not testify at trial.

N.T., 5/14/14, at 3-4.[9]  Otherwise, trial counsel did not object to the trial court's instructions on conspiracy.

_____

[9] During the charging conference, the following discussion occurred concerning the conspiracy charge:

> THE COURT: ….   With respect to the issue of the conspiracy charge.  During our charging conference, it came to the [c]ourt's attention that the grand jury indictment [listed] conspiracy to commit attempted murder, as well as conspiracy to commit aggravated assault[;] it did not mention conspiracy to commit kidnapping because [the] information didn't mention conspiracy to commit kidnapping.  For the record, [Commonwealth,] your argument is the Court should charge conspiracy related to kidnapping?
>
> [The prosecutor]: …. [T]he bills of information are the official charging document and they do list, in fact, kidnapping as one of the crimes for which the defendants are accused of conspiring to commit.  At this stage, there's no reason not to charge that based upon the evidence presented in the case and based on the bills of information[.]

N.T., 5/14/14, at 2-3.  Trial counsel countered it would be inappropriate to charge the jury on conspiracy to commit kidnapping, where the indictment, *i.e.*, "the actual charging instrument," made no mention of conspiracy to commit kidnapping.  *Id.* at 3.  The trial court ruled that

> the [c]ourt is finding that the indictment comes first.  The bills of information are generated from that, but the defense was on notice and there was documentation from the Commonwealth indicating there was a conspiracy to commit kidnapping.  There was no motion to quash and there was testimony on the record and reasonable inferences in the testimony to support an attempted kidnapping whereby the [c]ourt will charge the jury with respect to the conspiracy as related to kidnapping.

*Id.* at 4.

On May 16, 2014, the jury found Appellant guilty of aggravated assault – serious bodily injury, attempted kidnapping, and "Conspiracy"; it acquitted Appellant of the remaining charges, including attempted murder. Verdict Sheet, 5/16/14. Significantly, **the verdict sheet provided the jury no interrogatory to render a finding regarding the underlying object of the conspiracy**.[10] *Id.* Moreover, when the jury delivered its guilty verdict, in open court, on the conspiracy count, no object of the conspiracy was specified. N.T., 5/16/14, at 4. Notwithstanding the jury's general verdict on the conspiracy charge, the trial court, immediately following the jury's verdict, completed a "Trial Disposition Form" indicating that the jury found Appellant guilty of "Conspiracy – **Aggravated Assault**[.]" Trial Disposition Form, 5/16/14, at 2 (emphasis added).

On July 25, 2014, the trial court sentenced Appellant to an aggregate term of 21 to 42 years of imprisonment. The trial court structured its sentence as follows, and ordered each sentence to run **consecutively**:

- Aggravated assault: 10 – 20 years in prison;

- Attempted kidnapping: 5 – 10 years in prison;

- "Conspiracy": 6 – 12 years in prison.

_____

[10] However, regarding the aggravated assault charge, the verdict sheet posed an interrogatory asking the jury to make a finding as to whether the evidence established that Appellant caused the victim serious bodily injury. Verdict Sheet, 5/16/14.

Sentencing Order, 7/25/14, at 1 (unpaginated). Regarding conspiracy, the sentencing order characterized Appellant's conviction as follows: "18 § 903 §§ C - Conspiracy - **Aggravated Assault** (F1)[.]" ***Id.*** (emphasis added); ***see also*** N.T., 7/25/14, at 53 (trial court imposing sentence in open court for "conspiracy/aggravated assault").

Appellant timely filed a post-sentence motion, which the trial court denied.[11] Thereafter, Appellant timely filed a direct appeal through trial counsel. Appellant challenged, *inter alia*, the sufficiency and weight of the evidence supporting his convictions. This Court affirmed Appellant's judgment of sentence. ***Commonwealth v. Shields***, 154 A.3d 865, 3376 EDA 2014 (Pa. Super. 2016) (unpublished memorandum).[12] Our Supreme Court subsequently denied allowance of appeal. ***Commonwealth v. Shields***, 166 A.3d 1228 (Pa. 2016).

**Prior PCRA History**

_____

[11] In his post-sentence motion, Appellant did not challenge the legality of his sentence; rather, he asserted that his sentence was manifestly excessive. Post-Sentence Motion, 7/31/14, ¶ 2.

[12] On direct appeal, this Court stated, "Appellant was not convicted of conspiracy to commit kidnapping, but of conspiracy to commit aggravated assault." ***Shields***, 154 A.3d 865 (unpublished memorandum at 15) (citing the sentencing order and notes of testimony from the sentencing hearing); ***see also id.*** (acknowledging that the trial court "charged the jury that the crimes of attempted murder, aggravated assault, and/or kidnapping were the objects of the criminal conspiracy.").

- 8 -

The PCRA procedural history that ensued is tortured, spanning multiple years. Appellant timely filed a *pro se* PCRA petition on November 6, 2017, his first. The PCRA court appointed Appellant counsel, Valarie Palazzo, Esquire (first PCRA counsel), who filed an amended PCRA petition on May 1, 2018. The amended petition asserted multiple claims of trial counsel's ineffectiveness,[13] alleging, *inter alia*, that counsel "fail[ed] to object [to] … numerous improper and highly prejudicial statements made by [the prosecutor] in her closing argument." Amended PCRA Petition, 5/1/18, ¶ 5(a); **see also id.** ¶ 5(b). The Commonwealth filed a motion to dismiss the PCRA petition on November 6, 2018.

First PCRA counsel filed a supplemental amended PCRA petition on July 18, 2019. The supplemental petition asserted, *inter alia*, "[trial] counsel was ineffective at trial because counsel did not object to a misleading, vague and

---

[13] At the outset, we recognize the well-settled law regarding claims of ineffective assistance of counsel (IAC):

> To be entitled to relief on an [IAC] claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (footnote omitted; citations omitted). "The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail." **Commonwealth v. Lawrence**, 309 A.3d 152, 155 (Pa. Super. 2024) (citation omitted).

confusing charge by the [trial c]ourt to the jury on the offense of conspiracy."

Supplemental Amended PCRA Petition, 7/18/19, ¶ 5(c).[14]

On September 19, 2019, the PCRA court entered an order summarily granting Appellant's PCRA petition, and awarding Appellant a new trial.[15] The Commonwealth timely appealed.

This Court reversed the PCRA court on December 24, 2020. *See generally Commonwealth v. Shields*, 323 A.3d 181, 2991 EDA 2019 (Pa. Super. 2019) (unpublished memorandum) ("*Shields I*"). The *Shields I* Court concluded that the PCRA court erred, where it

> did not indicate in its September 19, 2019 order the basis on which it granted [Appellant's] petition for PCRA relief. Nor did the PCRA court provide in its Pa.R.A.P. 1925(a) opinion the reasons for the rulings and errors complained of by the Commonwealth in its [Pa.R.A.P. 1925(b)] concise statement. Thus, our appellate review of the issues raised by the Commonwealth is hampered by our inability to determine which of [Appellant's] ineffectiveness claims the PCRA court found to be meritorious.

*Id.* (unpublished memorandum at 5-6). We thus remanded the matter to the PCRA court, and retained jurisdiction, ordering the court to issue a revised Rule 1925(a) opinion addressing the Commonwealth's claims of error. *Id.* (unpublished memorandum at 6).

---

[14] The supplemental amended PCRA petition did not elaborate further.

[15] The PCRA court neither conducted an evidentiary hearing prior to granting relief nor specified which of Appellant's multiple IAC claims merited relief.

The PCRA court complied with the **Shields I** Court's remand directive and issued a revised opinion on April 7, 2021, and accompanying order, again recommending that this Court affirm the grant of PCRA relief.[16]  **See generally** PCRA Court Opinion, 4/7/21.

This Court subsequently vacated the grant of PCRA relief and remanded the matter for an evidentiary hearing on Appellant's ineffectiveness claims stating, in pertinent part, the following:

> [B]ecause the PCRA court did not conduct an evidentiary hearing to permit trial counsel … to explain the bases for [counsel's] legal strategies, we cannot determine whether trial counsel had a reasonable basis for not objecting to comments made by the prosecutor during closing argument or to the trial court's jury instructions ….
>
> * * *
>
> Accordingly, we remand for the PCRA court to conduct an evidentiary hearing to permit the introduction of evidence and testimony relevant to the claims raised by [Appellant] in his PCRA petition.

**Commonwealth v. Shields**, 260 A.3d 153, 2991 EDA 2019 (Pa. Super. 2021) (unpublished judgment order at 3) ("**Shields II**").

In compliance with **Shields II**, the PCRA court conducted an evidentiary hearing on September 15, 2022, and considered testimony from, *inter alia*, trial counsel in relation to Appellant's IAC claims.  By an order (and

_____

[16] The PCRA court did not conduct an evidentiary hearing on Appellant's claims.

- 11 -

accompanying opinion) entered January 31, 2023, the PCRA court again granted Appellant's PCRA petition and awarded him a new trial.

This Court previously summarized the pertinent contents of the PCRA court's January 31, 2023, opinion:

> The PCRA court … explained that the grant of [Appellant's PCRA] petition and award of a new trial was on the ground that trial counsel was ineffective for not objecting to "claims" made in the prosecutor's summation. PCRA Court Opinion, [1/31/23, at] 7. Specifically, the PCRA court ruled that there was arguable merit [to Appellant's claim] that trial counsel should have objected to claims "such as" (1) trial counsel "was 'purposefully trying to mislead you [the jury]'" [;] or (2) "it's about people like you… [the jury], [w]ho live in apartment complexes like the people at the Joshua Street Houses." *Id.* at 7-8[] (brackets in PCRA court opinion). *See* N.T.[,] 5/15/14, [at] 13, 24.

**Shields III**, 323 A.3d 181 (unpublished memorandum at 13-14).[17]

---

[17] The **Shields III** Court summarized the full context of the prosecutor's challenged comments as follows:

> Now, the shooting happens right before 1:38[ ]p[.]m. Now, how do we know that? Because there's a 911 call, the 911 print out, that [the parties] all agreed to or stipulated to. Showing the first 911 call at 1:37:52[ ]p[.]m. So the shooting happened, what, a minute[] or two before. I don't know why [trial counsel] -- **I don't know why he's purposefully trying to mislead you.**
>
> [Trial Counsel]: Objection.
>
> [Prosecutor]: I would hope not, but the defendants, the evidence, that they agreed to put the shooting at before 1:38, and 2 to 3 minutes after that shooting, [Appellant], and at least [] Roane because we have his phone and are driving [*sic*] away.

*(Footnote Continued Next Page)*

The Commonwealth again appealed the PCRA court's grant of relief. "Notably, the PCRA court neither ordered a Rule 1925(b) Statement, nor filed a revised opinion." *Id.* at 15.

In **Shields III**, this Court initially addressed Appellant's IAC claim concerning the prosecutor's remarks in her summation, and the PCRA court's grant of a new trial on this issue. *See id.* at 16-27. We reversed the PCRA court's grant of relief based on our conclusion that Appellant had failed to establish the "prejudice prong" of the IAC test. *See id.* at 23-27; *see also* **Commonwealth v. King**, 57 A.3d 607, 613 (Pa. 2012) ("To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (citation and internal quotation marks omitted)).

We went on to observe that (1) "the written order of the PCRA court grants [Appellant's PCRA] petition (and all subsequent amendments) in total, rather than in part"; and (2) "[Appellant] litigated fully before the PCRA court a claim that trial counsel [was] ineffective for not objecting to the court's instructions on criminal attempt and criminal conspiracy in that [counsel] did not clearly distinguish a substantial step from an overt act." *Id.* at 27. We emphasized that

_____

N.T.[,] 5/15/14, [at] 13.

**Shields III**, 323 A.3d 181 (unpublished memorandum at 18) (emphasis and some brackets added).

[t]he PCRA court did not enter a specific ruling on this claim, either granting it or denying it. We also recognize that whether a reasonable basis or actual prejudice was proven at the [PCRA evidentiary] hearing may play out differently with a jury instruction claim. Out of fairness to all of the parties, we therefore remand the matter for the PCRA court to write a supplemental opinion stating clearly its ruling on this claim, and its reasons therefor, including a determination of whether the [jury] instructions were confusing, whether [trial] counsel had a reasonable basis to not object, and whether, in light of the strong evidence supporting the verdict, there was actual prejudice from [trial] counsel's alleged failure. We will relinquish jurisdiction so that the parties can, within 30 days of the entry of the supplemental opinion and order, appeal the ruling if they so choose.

*Id.* at 27-28 (internal citations to record and footnote omitted).

**The Instant Appeal**

On July 10, 2024, the PCRA court issued the dismissal order underlying the instant appeal, which was accompanied by a supplemental opinion (Supplemental Opinion).[18] In the order, the PCRA court (1) initially summarized the *Shields III* Court's remand instructions in connection with Appellant's remaining IAC claim; and (2) "decreed that [Appellant's] PCRA claim that trial counsel was ineffective for not objecting to the trial court's instructions on criminal attempt and criminal conspiracy is dismissed." Order, 7/10/24 (emphasis omitted; some capitalization modified).

_____

[18] The PCRA court held no evidentiary hearing prior to dismissing Appellant's PCRA petition.

- 14 -

We need not discuss the Supplemental Opinion in detail, as its analysis is not pertinent to the claims of error Appellant raises on appeal,[19] addressed *infra*. In short, the PCRA court concluded that Appellant had failed to meet his burden of proving any of the three prongs of the IAC test in connection with his remaining IAC claim. **See** Supplemental Opinion, 7/10/24, at 2-6.[20]

Appellant timely filed a notice of appeal, through first PCRA counsel, within 30 days of the Supplemental Opinion and order.[21] On August 15, 2024, new PCRA counsel for Appellant, Michael Wiseman, Esquire (current PCRA

---

[19] Appellant concedes in his appellate brief that the "claim for relief presented by [first] PCRA counsel," *i.e.*, trial counsel's ineffectiveness for failing to object to the jury instructions, which "was addressed in the PCRA court's Supplemental Opinion and [] is the ostensible subject of this appeal, **does not have arguable merit.** Accordingly, it will not be briefed []." Appellant's Brief at 8 (italics omitted; emphasis added).

[20] The PCRA court opined, "trial counsel cannot be deemed ineffective for not objecting to the jury instruction on conspiracy since the instruction was correct and trial counsel would have had no reasonable basis to object." Supplemental Opinion, 7/10/24, at 2 (bold omitted; some capitalization modified). The PCRA court further determined that "there was no actual prejudice [to Appellant,] considering the strong evidence in support of the verdict[.]" **Id.** at 5 (bold omitted; some capitalization modified).

[21] The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, nor did Appellant file one.

counsel), entered his appearance in the PCRA court.[22]  Current PCRA counsel

thereafter filed, in this Court, Appellant's principal brief and reply brief.[23]

On appeal, Appellant presents two issues for our review:

1. Did the Commonwealth violate due process of law when it failed to provide trial [] counsel with discovery showing that an eyewitness[] to the incident failed to select [Appellant] from a pre-trial photo array?  Was [first] PCRA counsel ineffective for failing to discover this fact through a review of the prosecutor's file, and litigate this due process violation?

2. Did Appellant's consecutive terms of imprisonment for two inchoate offenses violate 18 Pa.C.S. § 906, thus requiring resentencing?  Were all prior counsel, including [first] PCRA counsel, ineffective for failing to raise this claim and correct Appellant's illegal sentence?

Appellant's Brief at 2 (issues reordered for ease of disposition).

We are mindful of our standard of review: "When reviewing the [dismissal] of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error." *Commonwealth v. Drummond*, 285 A.3d 625, 633 (Pa. 2022) (citation, footnote, and quotation marks omitted).  "The scope of review is limited to

---

[22] Aside from his entry of appearance, current PCRA counsel did not submit any filings in the PCRA court.

[23] Current PCRA counsel also represents Thomas in connection with Thomas's appeal from a materially-identical July 10, 2024, Supplemental Opinion and order that the PCRA court issued in Thomas's case.  Thomas's appeal from that order is also listed before this panel, docketed at 2072 EDA 2024.  As current PCRA counsel explains, the respective appellate briefs in Appellant's and Thomas's cases are "materially identical" and raise the same issues. Appellant's Brief at 2 n.2.

the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." ***Commonwealth v. Conforti***, 303 A.3d 715, 725 (Pa. 2023) (citation omitted).

In both of his issues, Appellant asserts first PCRA counsel rendered ineffective assistance by failing to claim trial counsel's ineffectiveness, in relation to Appellant's underlying claims of error. ***See*** Appellant's Brief at 13-17, 19. Where a petitioner "alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of [the IAC test] relevant to each layer of representation." ***Commonwealth v. Parrish***, 273 A.3d 989, 1003 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." ***Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa. Super. 2010). "Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim." ***Treiber***, 121 A.3d at 445.

Instantly, Appellant concedes that he raises both of his issues for the first time on appeal, but claims the issues are nevertheless reviewable under ***Bradley***, ***supra***, and entitle him to collateral relief. Appellant's Brief at 2, 15-17, 19. **The Commonwealth concedes that Appellant "appears to satisfy [*Bradley's*] procedural prerequisites.**" Commonwealth Brief at 9. However, the Commonwealth maintains, it is unnecessary to afford Appellant

- 17 -

relief or again remand this matter for further proceedings, where (1) Appellant's underlying claims of error lack merit on their face (for reasons explained *infra*); and (2) first PCRA counsel cannot be deemed ineffective for failing to raise meritless claims. *See id.* at 10-16.

We initially recognize that in **Bradley**, our Supreme Court acknowledged that remand may be proper in certain cases where IAC claims are raised on appeal in the first instance:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition[er] would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness[]; however, **where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law**, the remand should be afforded[.]

**Bradley**, 261 A.3d at 402 (internal citations, quotation marks, brackets, and footnote omitted; emphasis added); *see also Parrish*, 273 A.3d at 1002 (same). However, "**Bradley** did not guarantee a PCRA petitioner substantive review of claims of PCRA counsel's ineffectiveness, nor did it create an absolute right to remand for development of those claims." *Lawrence*, 309 A.3d at 155.

Instantly, the record demonstrates that Appellant's first opportunity to raise both of his claims asserting first PCRA counsel's IAC arose upon the filing of Appellant's appellate brief, through current PCRA counsel, on March 7,

2025. Appellant also has undisputedly met the procedural prerequisites of **Bradley**. Accordingly, we address Appellant's issues to determine whether they entitle him to collateral relief and/or a remand under **Bradley**.

In his first issue, Appellant argues the Commonwealth deprived him of due process, in violation of **Brady v. Maryland**, 373 U.S. 83 (1963),[24] "when it failed to disclose the non-identification of Appellant during a photo array." Appellant's Brief at 17 (capitalization modified). Appellant maintains that, effective October 1, 2020, the Philadelphia District Attorney's Office has an "open file" policy, permitting defense counsel to review and inspect the Commonwealth's case file. *Id.* Appellant avers the case file "contains an affidavit of probable cause that was presumably provided to trial counsel." *Id.* at 18. According to Appellant, current PCRA counsel's review of the case file disclosed that "there is nothing in the file showing that the [Commonwealth] ever revealed to [trial] counsel the name" of an individual identified in the affidavit of probable cause only as "Witness 1, who did not select Appellant from [a photographic] array." *Id.* (footnote omitted). Appellant maintains the case file identified "Witness 1" as Ms. Boyle, *i.e.*, the eyewitness to the shooting who testified at trial; Ms. Boyle was not questioned regarding her inability to identify Appellant from the photographic array. *Id.* Appellant contends trial counsel's failure to question Ms. Boyle concerning her inability

_____

[24] **Brady**, 373 U.S. at 87 (holding that due process prohibits the prosecution from suppressing evidence material to guilt or punishment).

to identify Appellant from the array "itself constitutes some evidence that [Ms. Boyle's] name was not provided as having not made an identification." ***Id.***

Appellant thus argues that 1) the Commonwealth's alleged failure to disclose Ms. Boyle's non-identification of Appellant in the photo array violated his due process rights; and 2) "[first] PCRA counsel was ineffective for failing to avail herself of the [Commonwealth's] open file policy." ***Id.*** at 19. Appellant submits, however, that "the record before this Court does not permit resolution" of his ***Brady*** claim, and that we should therefore "remand for further development of [first] PCRA counsel's ineffectiveness and prongs 2 and 3 of the ***Brady*** analysis" (discussed *infra*). ***Id.***; ***see also id.*** ("Appellant submits that there is sufficient facial merit to this claim to support remand for 'further development' per ***Bradley***.").

The Commonwealth counters that "the existing record establishes that the [non-identification] evidence is immaterial[,] … because Witness 1's non-identification of [Appellant] *was fully consistent* with [Ms.] Boyle's non-identification of [Appellant] in her out-of-court statement and in-court testimony." Commonwealth Brief at 14 (emphasis in original). Accordingly, the Commonwealth concludes, "[Appellant's] claim fails on its face," and first PCRA counsel cannot be deemed ineffective for failing to raise a meritless claim of error. ***Id.*** at 16; ***see also id.*** ("[A] third remand for futile further proceedings is not warranted.").

Initially, we recognize that a **Brady** claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Bagnall**, 235 A.3d 1075, 1084 (Pa. 2020). Concerning alleged **Brady** violations, "[t]he defendant bears the burden of demonstrating that the Commonwealth withheld or suppressed evidence." **Commonwealth v. Smith**, 17 A.3d 873, 887 (Pa. 2011) (citation omitted). "In the PCRA context, a petitioner must demonstrate that the alleged **Brady** violation so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Mickeals**, 335 A.3d 13, 24 (Pa. Super. 2025) (citation omitted).

Our Supreme Court has recently reiterated that

> to establish a **Brady** violation, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; **and prejudice must have ensued**. **Evidence is material and must be disclosed if there is a reasonable probability that the result of the proceedings would have been different had it been disclosed**. However, the mere possibility that undisclosed evidence may have helped the defense or might have affected the outcome of the trial does not establish materiality. In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. As such, a defendant need not demonstrate there would not have been enough left to convict after discounting the inculpatory evidence in light of the undisclosed evidence, but need only show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Commonwealth v. Johnson*, 335 A.3d 685, 717 (Pa. 2025) (quotation marks, brackets, and citations omitted; emphasis added). Furthermore, "***Brady* evidence may not be cumulative of other evidence**, cannot have been equally available to the defense, and cannot have been discoverable through the exercise of reasonable diligence[.]" *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013) (citations omitted; emphasis added).

Instantly, applying *Bradley*, we determine (1) Appellant has failed to establish any "material facts at issue concerning claims challenging [first PCRA] counsel's stewardship" in connection with Appellant's *Brady* challenge; and (2) relief on this challenge is "plainly unavailable as a matter of law[.]" *Bradley*, 261 A.3d at 402. Our review discloses that, at trial, Ms. Boyle was unable to identify the individuals who fired shots at the victim. Ms. Boyle testified that she had met the victim approximately two or three months prior to the incident. N.T., 5/18/14, at 40. Although Ms. Boyle testified she recognized the victim, she explicitly stated, "I didn't get a good look at the guys that had th[e] guns" while watching the incident unfold from her vantage point in her second-floor apartment. *Id.* at 20; *see also id.* at 33 (Ms. Boyle denying that she had ever seen the victim's assailants); *id.* at 77 (Ms. Boyle

agreeing that, when she observed the incident, she was focused on the victim, and not his assailants).[25]

In his brief, Appellant makes no reference to Ms. Boyle's above-summarized testimony, nor does he make any effort to explain how the alleged withholding of the fact that Ms. Boyle was unable to identify Appellant in a photographic array prejudiced him. *See Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) ("A PCRA petitioner must address each of [the IAC test] prongs on appeal." (citing *Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the [IAC test prongs] on appeal[.]")); *Commonwealth v. Lawrence*, 313 A.3d 265, 278 n.3 (Pa. Super. 2024) ("It is well settled that this Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation, brackets, and quotation marks omitted)). Because Ms. Boyle's inability to identify Appellant in a photographic array was plainly consistent with, and **cumulative** of, her trial testimony, Appellant's first issue is meritless on its face, and does not require remand for an evidentiary hearing. *See Simpson*, 66 A.3d at 264; *Bradley*, 261 A.3d at 402.

---

[25] When pressed by the Commonwealth, Ms. Boyle was only able to recall that the perpetrators "were black, medium build, they had dark clothing on …. I believe they had facial hair as well[.]" N.T., 5/18/14, at 28; *see also id.* at 57.

In his second issue, Appellant claims (1) the trial court illegally sentenced him to the extent it imposed consecutive terms of imprisonment for two inchoate offenses, *i.e.*, attempted kidnapping and "Conspiracy";[26] and (2) trial counsel, and first PCRA counsel, were ineffective for failing to challenge this error. *See* Appellant's Brief at 9-17. Appellant cites section 906 of our Crimes Code, which provides "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." *Id.* at 9-10 (quoting 18 Pa.C.S.A. § 906). Appellant contends that

> the trial court had no basis for assigning an object to the conspiracy because there was no way to know whether the jury found Appellant guilty of conspiracy with the object being aggravated assault or attempt to kidnap. If the jury found the latter, a consecutive sentence was prohibited by section 906.

*Id.* at 11.

Appellant emphasizes the trial court's following instruction regarding the objects of the conspiracy:

> The accused[s] in this case are being charged with Conspiracy. The Commonwealth is alleging that each defendant conspired with the other and with [] Roane. The Commonwealth is alleging that the crime of attempted murder, aggravated assault, **and/or** attempted kidnap were the objects of the conspiracy.

---

[26] Appellant points out that the jury made no finding as to the underlying object of the conspiracy in either its verdict sheet or in open court. Appellant's Brief at 11-12.

N.T., 5/15/2014, at 43 [(emphasis added by Appellant)]…. [The trial court's] use of the disjunctive when describing the objects of the conspiracy, "attempted murder, aggravated assault, **and/or** attempted kidnap were the objects of the conspiracy" means that the jury could have found the object of the conspiracy was to commit kidnapping. The object of the conspiracy was not specified when the jury delivered its verdict in open court[. ]N.T., 5/16/2014, at 4… (jury delivered a guilty verdict on the conspiracy count without specifying the object). Nor was the object of the conspiracy [] specified on the verdict sheet. Rather, the verdict sheet simply has a box with "Conspiracy" and no interrogatory regarding the object of the conspiracy was given to the jury.[FN8]

> [FN8] The [trial] court posed an interrogatory for the aggravated assault count, giving the jury a choice between [whether the evidence supported that Appellant caused the victim] serious bodily injury, or not.

Appellant's Brief at 11-12 (footnote and emphasis in original; some record citations omitted; citations modified).

Appellant claims he met his burden of proving all three prongs of the IAC test, where "this sentencing claim has more than arguable merit and, if accepted, it would result in a reduction of Appellant's sentence. Therefore[, Appellant's claim] meets prongs (1) and (3)" of the IAC test. Appellant's Brief at 16. Appellant contends he also met the second, "reasonable basis" prong, where

no lawyer would intentionally decide to not raise a claim that could have resulted in a reduction of [Appellant's] sentence by about a third.[FN11]

> [FN11] Appellant was sentenced to 21-42 years [in prison]. If the sentencing error is corrected, and his 6-12-year consecutive sentence for conspiracy is removed, the new sentence would be 15-30 years.

*Id.* at 16-17 (footnote in original).

Finally, Appellant maintains no remand for further development of the record under **Bradley** is necessary, as "[t]he facts underlying the substance of the identified sentencing error are clear and [] based on the trial court record." **Id.** at 15. "Nor does Appellant believe that further development is required regarding the underlying ineffectiveness claim." **Id.** at 16. Nevertheless, Appellant states he "would not object to [a] remand for appropriate hearings" on this issue. **Id.** at 17.

The Commonwealth counters

> [Appellant's] separate sentences for the inchoate offenses of attempted kidnapping and conspiracy to commit aggravated assault are legal because the record establishes the existence of two conspiratorial agreements, separated by time, with different criminal objectives in mind.

Commonwealth Brief at 13.

> [Appellant] and his accomplices attempted to kidnap the victim by shoving him into their car. That attempt failed when the victim ran away. Only then did [Appellant] and Thomas agree to assault the victim by shooting him as he ran away.

**Id.** at 11 (internal citations to record omitted). The Commonwealth emphasizes that the indictment charged Appellant with conspiracy to commit aggravated assault and/or attempted murder. **Id.** at 13; Indictment, 1/11/13, at 2-3 (unpaginated). Moreover, according to the Commonwealth,

> the jury asked the following question as to conspiratorial liability during their deliberations: "If there is a conspiracy to commit agg/assault, then if one of the conspirators is guilty of A/A, is the other conspirator necessarily guilty of A/A too?"

*Id.* at 6 (emphasis omitted).[27] The Commonwealth suggests that the conspiracy jury question indicates the jury intended to convict Appellant on conspiracy to commit aggravated assault. *Id.* at 6, 13.

Contrary to the Commonwealth, Appellant asserts in his reply brief that

the fact that Appellant was indicted only for conspiracy to attempt to commit murder or aggravated assault, does not shed light on the object of the conspiracy that was actually argued to the jury[28]

_____

[27] We hereinafter refer to this purported jury question as the "conspiracy jury question[,]" which was dated May 15, 2014, and purportedly signed by the jury foreperson. The Commonwealth does not provide a record citation regarding the conspiracy jury question; rather, it merely attached a copy of the document to its appellate brief as an exhibit. Commonwealth Brief, Exhibit B. Our review of the record discloses a copy of the conspiracy jury question is contained in the trial exhibits of record, as the final document. Moreover, immediately prior to the jury's rendering its verdict on May 16, 2014, the trial court briefly noted on the record that the jury had submitted three questions to the trial court during deliberations. *See* N.T., 5/16/14, at 2. Significantly, however, these three questions did not include the conspiracy jury question, and **the trial court made no mention of the conspiracy jury question.** *Id.* Immediately after the trial court responded to the jury's three other questions, the jury rendered its verdict. *Id.* at 3-5.

[28] Appellant emphasizes that the prosecutor stated, in her closing argument, the following:

The defendants are charged with 3 major crimes in this case. They are charged with attempted murder, attempted kidnapping, they're charged with conspiracy. That's the most important charge for you to think about. Because conspiracy is what ties [Appellant and Thomas] together. ….

In this case, this entire incident, from the beginning to the end, was a conspiracy.

N.T., 5/15/14, at 19-20; *see also* Appellant's Reply Brief at 2-3. According to Appellant,

*(Footnote Continued Next Page)*

and upon which the jury was instructed. In the final analysis then, it is irrelevant that Appellant was not charged by the Indictment with a conspiracy to kidnap – that crime was argued to the jury and the court instructed on it.

Appellant's Reply Brief at 3 (footnote added).

Upon review, we determine Appellant's issue meets all of ***Bradley***'s above-described requirements to entitle him to a remand for further development of the record regarding this issue. Specifically, Appellant (1) "provide[d] more than mere boilerplate assertions of [first] PCRA counsel's ineffectiveness"; (2) established that "there are material facts at issue concerning claims challenging [first PCRA] counsel's stewardship"; and (3) demonstrated that "relief is not **plainly** unavailable as a matter of law." ***Bradley***, 261 A.3d at 402 (emphasis added). As explained *supra*, the trial court instructed the jury that the Commonwealth maintained "the objects of the conspiracy" could include "attempted murder, aggravated assault, and/or attempted kidnap[.]" N.T., 5/15/14, at 43. In rendering its verdict, the jury at no time made a finding as to the underlying object of the conspiracy. ***See*** Verdict Sheet, 5/16/14; N.T., 5/16/14, at 4. Nevertheless, the trial court

_____

[t]he prosecutor did not distinguish between conspiracy to commit an attempt to kidnap or a conspiracy to attempt to commit murder or aggravated assault. Rather, as the [trial] court did in its instructions, [the prosecutor] referred to the entire incident as encompassing two conspiracies, not just the one charged in the indictment[.]

Appellant's Reply Brief at 2.

unilaterally assigned to Appellant's conspiracy conviction the underlying object of "Aggravated Assault." Sentencing Order, 7/25/14, at 1 (unpaginated); Trial Disposition Form, 5/16/14, at 2.

The PCRA court[29] had no opportunity to substantively consider Appellant's newly-raised claim.[30] Our Supreme Court, in ***Commonwealth v. Greer***, 316 A.3d 623 (Pa. 2024), emphasized "the role of the PCRA court as the court of first impression[,]" stating that

> [t]he PCRA court **should have the first opportunity** to address factual and legal claims.[FN4] ***See Commonwealth v. Scolieri***, … 813 A.2d 672, 678 (Pa. 2002). An appellate court's proper role is to **review the PCRA court's decision** for an error of law or an abuse of discretion. ***See Commonwealth v. Mason***, … 130 A.3d 601, 617 (Pa. 2015).
>
> > [FN4] This preference does not, however, contradict ***Bradley***'s observation that "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims." ***Bradley***, 261 A.3d at 402. The preference applies only where there is **any question** about the merit of the newly-raised ineffectiveness claim.

***Greer***, 316 A.3d at 630-31 (footnote in original; emphasis added). As noted in ***Bradley***, our appellate courts are not "tasked with developing the record

---

[29] We reiterate that the PCRA judge also presided at Appellant's trial.

[30] As explained *supra*, in its Supplemental Opinion, the PCRA court recognized it was "[c]onstrained" by the ***Shields III*** decision, which remanded for further PCRA court analysis of Appellant's **now-abandoned** IAC claim. Supplemental Opinion, 7/10/24, at 1. The Supplemental Opinion pertained to only that abandoned claim, ***see id.*** at 2-6, and in no way addressed Appellant's claim related to the legality of his sentence.

or acting as a court of original jurisdiction"; rather, they "have the ability to grant or deny relief on **straightforward** claims, as well as the power to remand to the PCRA court for the development of the record." ***Bradley***, 261 A.3d at 402-03 (emphasis added); ***see also Commonwealth v. Shaw***, 247 A.3d 1008, 1017 (Pa. 2021) ("[T]he PCRA court is 'the appropriate—and, indeed, the only—forum for the evidentiary and factual development'" of PCRA claims (quoting ***Commonwealth v. Koehler***, 229 A.3d 915, 937 (Pa. 2020)).

We are guided by our decision in ***Commonwealth v. Riley***, 811 A.2d 610 (Pa. Super. 2002). In that case, the Commonwealth charged the defendant with one count each of conspiracy, burglary, and theft by unlawful taking or disposition. ***Id.*** at 612. A jury found the defendant guilty of criminal conspiracy, and not guilty of the remaining charges. ***Id.*** Appellant filed a post-trial motion for extraordinary relief, challenging the sufficiency and weight of the evidence supporting his conviction. ***Id.*** at 612-13. At a hearing on the motion, the trial court "acknowledge[ed] the existence of an ambiguity in the jury's verdict[.]" ***Id.*** at 613. Specifically, the court stated that "[the defendant] was convicted by a jury of conspiracy to commit **either** theft or burglary. I'm not sure whether that was determined." ***Id.*** (emphasis added); ***see also id.*** (observing "that burglary is graded as a felony of the first degree and theft is a felony of the third degree"). The trial court ruled that it was "going to make a finding that this conviction is a felony of the first degree[,]"

based upon its "belie[f] that the jury did find [the defendant] guilty of conspiracy to commit both" burglary and theft.  *Id.* (citation omitted).

The defendant filed a direct appeal, challenging the weight and sufficiency of the evidence, as well as the trial court's determination that the jury found the defendant guilty of the more serious offense of conspiracy to commit burglary, as opposed to theft.  *Id.* at 613-14.  This Court affirmed the conviction and rejected Appellant's weight and sufficiency challenges.  *See id.* at 614-17.  However, we held the trial court unlawfully sentenced the defendant on conspiracy to commit burglary, where the jury's general conspiracy verdict was ambiguous:

> [**I**]**n the absence of** <u>**clear evidence of the jury's intent**</u> **to the contrary, a general conspiracy verdict must be resolved in favor of the defendant**, and may be construed only as a conviction of conspiracy to commit the least serious underlying offense for which the jury could properly have found the defendant to have conspired to commit.  Consequently, while the record here supports a verdict of conspiracy to commit burglary or theft, the jury's ambiguous verdict must be resolved in [the defendant's] favor, and we must conclude that the trial court erred in sentencing [the defendant] for the more serious offense of conspiracy to commit burglary, and should have sentenced him for conspiracy to commit theft by unlawful taking.

*Id.* at 620-21 (footnote omitted; emphasis added).  Accordingly, we vacated the defendant's judgment of sentence and remanded for resentencing.  *Id.* at 621.

Instantly, the jury's general conspiracy verdict was ambiguous as to the underlying object of the conspiracy.  Moreover, as discussed *supra*, the Commonwealth maintains the jury, during its deliberations, submitted the

conspiracy jury question to the trial court, which purportedly evinced its intent to convict Appellant of conspiracy to commit aggravated assault. However, the record regarding this matter is unclear, and the trial court made no mention of the conspiracy jury question on the record, despite expressly responding to three other questions that the jury had submitted. N.T., 5/16/14, at 2.

In sum, and mindful of the unique procedural posture and irregularities of this case,[31] we conclude the most prudent course is to remand for the PCRA court to consider, in the first instance, Appellant's newly-raised IAC claim related to the legality of his sentence on the conspiracy conviction. *See Lawrence*, 309 A.3d at 156 (concluding remand was appropriate where the PCRA petitioner raised, for the first time on appeal, an IAC claim regarding his prior PCRA counsel pursuant to *Bradley*. Further stating, "because the PCRA court did not explain its fact finding or basis for dismissing the claims that were litigated before it, we find ourselves unable to conduct proper appellate review."); *Parrish*, 317 A.3d at 561-62 (where PCRA petitioner properly raised, for the first time on appeal, claims pursuant to *Bradley*, "reluctantly[] remand[ing] the matter to the PCRA court[,]" where it "needs to further develop the record in this case and consider, in the first instance, Parrish's

_____

[31] We reiterate that the PCRA court on multiple prior occasions, **granted** Appellant PCRA relief.

layered [IAC] claims, all alleging the ineffective assistance of initial PCRA counsel[.]").

On remand, we defer to the sound discretion of the PCRA court regarding the extent and manner of the evidence to be adduced on Appellant's claim. However, the PCRA court must consider (1) the jury's verdict on the conspiracy charge and the legality of the sentence imposed thereon; (2) whether the trial court, in delivering its jury charge on conspiracy, intended to include kidnap or attempted kidnap as an object of the conspiracy; (3) the significance of the conspiracy jury question purportedly submitted during deliberations; and (4) whether there is merit to Appellant's IAC claim related to the legality of his sentence on the conspiracy conviction.

Based upon the foregoing, pursuant to *Bradley* and its progeny, we are constrained to vacate the July 10, 2024, order dismissing Appellant's PCRA petition and remand this case for further proceedings on Appellant's claim of first PCRA counsel's IAC, in connection with the underlying legality of sentence challenge.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/24/2025</u>